## BRAZEE *v.* SCHOFIELD.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF WASH-
INGTON.

Argued and submitted December 16, 1887. — Decided January 30, 1888.

In March, 1848, A S and E S, his wife, settled upon a tract of public land
in what was then the Territory of Oregon, and is now Washington
Territory, and from thenceforward continued to reside upon it, and
cultivated it for four years as required by the act of September 27, 1850,
9 Stat. 496, c. 76. After completing the required term of cultivation,
A S died intestate in January, 1853. In October, 1853, E S, assuming to
act under the amendatory act of February 14, 1853, filed with the Sur-
veyor General of the Territory, proof of the required residence and
cultivation by her deceased husband. In 1855 or 1856 the heirs and the
widow agreed upon a partition, she taking the east half and they the
west half. In 1856 the Probate Court made partition of the west half
among the heirs, and, one of them being a minor, appointed a guardian
to represent him, and directed the guardian to sell, by public auction, the
tract allotted to his ward in the partition. In accordance therewith
the guardian made such sale, and executed and delivered a deed of the
property to N S, the purchaser, who entered into possession of the tract,
and made valuable improvements on it, and from that time on paid the
taxes upon it. In May, 1860, the map of the public survey, showing
this donation claim, was approved, and in June, 1860, final proof of the
settlement and cultivation by A S was made. In June, 1862, E S died.
In July, 1874, the donation certificate was issued, assigning the west half
to A S, and the east half to E S; and in 1877, under the provisions of
Rev. Stat. § 2448 a patent was issued accordingly, notwithstanding the
deaths of the parties. Some years afterwards the heirs of A S and E S
sold and conveyed to J B their interest in the land so sold to N S. J B
thereupon brought this action against N S for possession of it. *Held:*

(1) That before the act of February 14, 1853, the settler not being
required to give notice in advance of the public survey, A S was
not in fault for not having given such notice during his lifetime;

(2) That, as the law contemplated that when a joint settlement had been
made by two, the benefit of the donation, in case of the death of
either, should be secured to the heirs, the notice given by the
widow in October, 1853, was sufficient to secure the donation claim
in its entirety;

(3) That the heirs of A S and their privies in estate were estopped, as
against N S, to deny that A S resided on the tract and cultivated
it, and that his widow and children were at the date of his death
entitled, under the statute, to the donation land claim;

(4) That the widow and the heirs having agreed to a division among themselves, other persons could not complain of the arrangement if the Surveyor General afterwards conformed to their wishes in this respect;

(5) That the proceedings in the Probate Court were warranted by the laws of Oregon in force at that time;

(6) That the minor having made no objection to those proceedings for eleven years after coming of age, and not having indicated an intention to disavow the sale until the property had greatly increased in value, his course was equivalent to an express affirmance of the proceedings, even if they were affected with such irregularities as, upon his prompt application after coming of age, would have justified the court in setting them aside.

*Hall* v. *Russell*, 101 U. S. 503, distinguished.

THIS was an action for the possession of real estate. Judgment for defendant. Plaintiff appealed. The case is stated in the opinion of the court.

*Mr. Leander Holmes* for appellant.

*Mr. Rufus Mallory* and *Mr. B. F. Dennison* submitted on their brief.

MR. JUSTICE FIELD delivered the opinion of the court.

This case comes before us on appeal from the Supreme Court of the Territory of Washington. The action was brought by the plaintiff below, who is appellant here, for the possession of a tract of land in Clarke County, in that Territory, containing about thirty-five acres, more or less, of which he alleges that he is the owner and entitled to the possession, but which the defendants wrongfully withhold from him, and have done so for the last six years, and of which they have during that time appropriated the rents and profits.

The plaintiff, in support of his alleged title to the premises, relies upon conveyances thereof from the heirs of Amos M. Short, in whose name and that of Esther Short, his wife, a patent of the United States was issued on the 13th of October, 1877, for a tract of land embracing the premises, in supposed compliance with the act of Congress of September 27, 1850, for the protection of settlers in the Territory of Oregon.

The defendants assert title to the premises through a conveyance thereof of an earlier date by the guardian. of one of the said heirs, made under the direction of the probate court of the county after partition had been had between the heirs of their respective interests.

It appears that on the 8th of March, 1848, Amos M. Short, and Esther Short his wife, settled upon a tract of land in the present county of Clarke and Territory of Washington, then constituting part of the Territory of Oregon, claiming the same under the laws of the provisional government of the country, which the inhabitants had established as early as 1845. By those laws each settler was entitled to 640 acres, upon complying with certain conditions as to their improvement. On the 14th of August, 1848, Congress passed an act establishing a government for the Territory. 9 Stat. 323, c. 177. The 14th section recognized and continued. in force the laws of the provisional government so far as the same were not incompatible with the Constitution of the United States and the principles and provisions of the act, but all laws making grants of land, or otherwise affecting or encumbering the title to lands, were declared to be void. Afterwards, on September 27, 1850, Congress passed an act commonly called the Donation Act of Oregon, by which the substantial benefits of the laws of the provisional government in the acquisition of titles to lands were secured to settlers. It is entitled " An act to create the office of Surveyor General of the Public Lands in Oregon, and to provide for the Survey and to make Donations to Settlers of the said Public Lands." 9 Stat. 496, c. 76. By the 4th section of this act, a grant of land was made to every white settler or occupant of the public lands in Oregon above the age of eighteen years, who was a citizen of the United States, or had made a declaration according to law of his intention to become a citizen, or who should make such declaration on or before the first day of December, 1851, and who was at the time a resident of the Territory, or might become a resident before December 1st, 1850, and who should reside upon and cultivate the same for four consecutive years, and otherwise conform to the provisions of the act. The grant

was of 320 acres of land if the settler was a single man; but if a married man, or if he should become married within one year from the first day of December, 1850, then it was of 640 acres; one half to himself and the other half to his wife, to be held by her in her own right, the Surveyor General to designate the part inuring to the husband and that to the wife, and enter the same on the records of his office.

The section further provided that in all cases where such married persons had complied with the provisions of the act, so as to entitle them to the grant, whether under the late provisional government of Oregon or since, and either should die before the patent was issued, the survivor, and children or heirs of the deceased, should be entitled to his share or interest in equal proportions, except where he should otherwise dispose of it by will.

By the 6th section the settler was, within three months after survey of the land, or where the survey had been made before the settlement commenced, then within three months from its commencement, to notify the Surveyor General of the United States for the Territory of the precise tract claimed by him under the act. By the 7th section he was, within twelve months after the survey, or where the survey had been made before the settlement, within that period after its commencement, to prove to the satisfaction of the Surveyor General, or of such other officer as might be appointed for that purpose, that the settlement and cultivation required had been commenced, specifying the time of the commencement; and after the expiration of four years from the date of such settlement, whether made under the laws of the provisional government or not, to prove in like manner by two disinterested witnesses the continued residence and cultivation required by the 4th section. Such proof being made, the Surveyor General, or other officer appointed for that purpose, was to issue a certificate, setting forth the facts and specifying the land to which the party was entitled, and to return the proof thus taken to the Commissioner of the General Land Office, and if he found no valid objection thereto, a patent was to issue for the land according to the certificate, upon its surrender.

By an act passed on the 14th of February, 1853, 10 Stat. c. 69, 158, the donation act was amended, extending the provisions of the original act to the first of December, 1855, and requiring any person entitled to the benefit of the 4th section of that act, who was a resident in the Territory on or prior to December 1st, 1850, to file with the Surveyor General of the Territory, in advance of the time when the public surveys should be extended over the particular land claimed by him, if such surveys had not been previously made, a notice setting forth his claim to the benefits of that section.

The four years' residence and cultivation required of Amos M. Short by the donation act were completed on the 8th of March, 1852. On the 9th of January, 1853, he died intestate, leaving his widow and ten children surviving him. Letters of administration on his estate were issued to her by the Probate Court of Clarke County; and she was appointed guardian of the minor children. Subsequently she surrendered her letters of administration, and one S. Burlingame was appointed administrator in her place, she continuing guardian of the minor children, with the exception of one of them, Alfred D. Short, of whom another was appointed guardian. On the 4th of October, 1853, assuming to follow the amendatory act of February 14, 1853, she filed with the Surveyor General of the Territory the notice in writing required by that act, showing that her deceased husband, by his residence upon and cultivation of the land, had complied with the provisions of the donation act, and as such was entitled to its benefit. On the 26th of May, 1860, the map of the survey of public lands, including the donation land claim, was approved by the Surveyor General, and on the 19th of June following the final proof of settlement, residence upon, and cultivation of the land was made, and on the 31st of July, 1874, the donation certificate was issued, by which the west half of the claim was assigned to Amos M. Short, and the east half to his wife Esther, who had died on the 28th of June, 1862. A patent for the donation claim was issued to them and their heirs, bearing date October 13, 1877, by which the west half of the claim was allotted and granted to Amos M. Short and his

heirs, and the east half was allotted and granted to Esther Short and her heirs. The patent was issued in this form, notwithstanding the death of Amos and Esther Short, pursuant to § 2448 of the Revised Statutes, reënacting the provisions of the act of May 20, 1836, 5 Stat. 31, c. 76, which declares that "where patents for public lands have been or may be issued, in pursuance of any law of the United States, to a person who had died, or who hereafter dies, before the date of such patent, the title to the land designated therein shall inure to and become vested in the heirs, devisees, or assignees of such deceased patentee, as if the patent had issued to the deceased person during life."

Some years after the issue of this patent the heirs of Amos and Esther Short conveyed their interest in the land in controversy to the grantors of the plaintiff.

It would seem that some time in the year 1855, or in 1856, the heirs of Amos M. Short and his widow agreed among themselves upon a division of the donation claim. The widow took the east half and the children the west half. In July, 1856, the part thus by agreement assigned to the children was, by order of the probate court, upon their application, partitioned among them. It was divided into ten parts, one of which was allotted to each child. The value of the different allotments was appraised and, where necessary to equalize their valuation, owelty was allowed. Of one of the heirs, Grant H. Short, a minor, a guardian was appointed, who subsequently, by order of the probate court, sold the property of his ward for the purpose of raising money with which to pay his just debts, and to furnish him the necessary means of living. The sale was made at auction to the highest bidder, and the defendant Nicholas Schofield became the purchaser, and a deed was executed to him bearing date April 29, 1865. He went at once into possession and put improvements upon the property to the value of $2000, and ever afterwards paid the annual taxes thereon.

The title thus obtained by the defendant is assailed by the plaintiff upon the alleged ground that no right to the donation claim was acquired by the residence and cultivation of Amos

M. Short, he not having notified the Surveyor General of his claim; and that the notice by Esther Short, in October, 1853, being given after his death, was of no efficacy; and that therefore no interest in any part of the land passed to his heirs to be partitioned or sold.

It is undoubtedly true that the donation act requires for the completion of the settler's right to a patent not only that he should reside upon the land and cultivate it for four years, but that he should notify the Surveyor General of the precise land he claims. The object of the law was to give title to the party who had resided upon and cultivated the land, and who was, therefore, in equity and justice better entitled to the property than others who had neither resided upon nor cultivated it. But it was also of importance to the government to know the precise extent and location of the land thus resided upon and cultivated. It was necessary to enable the government to ascertain what lands were free from claims of settlers, and thus subject to sale or other disposition. There was nothing, however, in the information to be communicated which rendered it necessary that it should proceed from the husband alone. So long as he remained the head of the family settlement there was a manifest propriety in its proceeding from him, but in case of his death it is not perceived why it might not come with equal efficacy from his widow, who then took his place as the head of the family. The law contemplates in all its provisions that where a settlement has been joint, by the two together, the benefit of the donation intended for both should be secured, in case of the death of either, to his or her heirs. It is true, the notice to the Surveyor General was the first proceeding which informed the public authorities of the intention of the occupant to avail himself of the benefits of the act, and of his acceptance of the proffered grant. But without the residence and cultivation required, the notice would be of no efficacy. By the original act they might precede the notice, if the public surveys had not been extended over the land. Until such survey was made no notice to the Surveyor General was required, and yet the occupant was not for the want of it to lose the grant which the act contemplated

as a reward for his continued residence and cultivation. It was the amendatory act of 1853 which required notice to be given to the Surveyor General in advance of the public surveys; and such notice could only be given by the widow, the husband being then dead. The event calling upon him to give the notice had not occurred during his life, that is, the survey of the land had not been made. He was not therefore in fault for not giving it. Under these circumstances it is not perceived why the widow might not give it, she and her children being directly interested in the matter. To hold otherwise, and thus impose a great loss upon them, would seem to be contrary to the general purpose of the act, which was to extend its protection to them as well as to the father and husband whenever his residence and cultivation had continued for the required period. Indeed, by the 8th section of the act of 1850 it was provided that upon the death of any settler before the expiration of the four years' continued possession required, the rights of the deceased should descend to the heirs at law of such settler, including his widow, where one was left, in equal parts, and that proof of compliance with the conditions of the act up to the time of his death should be sufficient to entitle them to a patent. Much more would it seem should the widow and children be secured in the donation, where the residence and cultivation had continued for the whole period required, and be permitted to perform any future act to establish their rights, required by reason of subsequent legislation. Besides, the act of 1864, amending the donation act, declares that a failure to file the notice within the time fixed should not work a forfeiture. 13 Stat. 184, c. 154. We are of opinion, therefore, that the notice given by the widow in October, 1853, was sufficient to preserve the donation claim in its entirety.

The case of *Hall* v. *Russell*, 101 U. S. 503, does not conflict with these views. There the husband died after residence of less than a year, and it was held that he had acquired no devisable interest in the property; the interest which the widow and heirs might take under the 8th section upon such limited residence and cultivation by the deceased husband was as donees of the government and not by descent.

There is another view of this case which would seem to conclude the appellant as to the sufficiency and legality of this notification by the widow. The patent of the United States was issued upon the supposed compliance of the patentees with the requirements of the donation act. That instrument is not in the record, but we must presume that it follows the usual form of such instruments, and recites the compliance of the patentees with the requirements of the act, and the production to the proper officers of satisfactory proof on that point. The appellant derives all the title he asserts through conveyances of the heirs of the deceased settler under the patent. As well observed by the Supreme Court of the Territory, under these circumstances these heirs and their grantees are estopped from "saying to the prejudice of any grantee of theirs, but that the husband and ancestor, Amos Short, deceased, duly resided upon and cultivated for the prescribed period the donation land claim known as his, or that, by virtue of a full compliance with the essential requirements of the donation act, his widow and children were, at the date of his death, in January, 1853, entitled under the act to that land claim."

The conditions for the acquisition of the title to the entire donation tract having been complied with, upon the notice given by his widow in October, 1853, followed by proof of the continued residence and cultivation required by the act, what remained to be done by the officers of the government was, to divide the land between the widow and heirs, assigning to her one half part, and to the heirs the other half. They having agreed to a division between themselves, it is not for any others to complain of the arrangement, if the Surveyor General afterwards conformed to their wishes in that respect.

As to the objections taken to the want of jurisdiction in the Probate Court of Clarke County to make the partition between the heirs, or to authorize the guardian of Grant H. Short to sell his interest, only a few words need be said. That the probate court was at that time vested with jurisdiction over proceedings for the partition of real property among

joint owners, and over proceedings for the sale, of the property of minors, upon proper application and showing, appears from the statutes of the Territory then in force. (See act. touching the relation of guardian and ward of 1855 ; and act respecting. executors, administrators, and the distribution of real and personal property of 1854; Laws of Territory, of 1854, p. 300, and of 1855, p. 14.) Whatever objections, therefore, there may be to the action of the probate court, they cannot arise from want of jurisdiction over the subjects considered, but must exist, if having any foundation, in defective proceedings or insufficient averments. And of objections of this character we can only say, that the facts touching the partition and sale are not sufficiently disclosed by the transcript to enable us to pass upon the objections. The records of the application for the partition, and of the guardian to sell, and of the proceedings taken in either matter, are not before us. It appears, however, that for many years after they came of age no objection was made by the heirs, who were minors at the time, to any of the proceedings in partition. On the contrary, they proceeded at once, after the partition, to exercise control by · themselves or guardians appointed by the probate court, over the several parts allotted to them ; and some of the heirs sold and conveyed to others their respective portions. The court below expressly ·finds that the heirs, who were minors in 1856, after becoming of full age adopted the partition as made and assented to by their guardians in that year. The minor Grant H. Short, whose property was sold to one of the defendants, received the benefit of the moneys obtained upon the sale ; they· were used to pay some just debts incurred for him, and to furnish him the necessaries of life. For eleven years after he became of age he made no objection to the proceedings, or by any act indicated his intention to disaffirm the sale or deed made by his guardian ; and then, in 1878, he gave to the grantors of the appellant a deed of his interest in the donation claim. In the meantime the property had greatly increased in value by the improvements put upon it by the purchaser and his grantee, Mary Schofield.

Under these circumstances, we think the Supreme Court of the Territory was correct in its conclusion that the long acquiescence of the minor, after he became of age, in the proceedings had for the sale of his property, was equivalent to an express affirmance of them, even were they affected with such irregularities as, upon his prompt application after becoming of age, would have justified the court in setting them aside.

*Judgment affirmed.*