[No. 561.  Decided October 29, 1892.]

HENRY ROEDER, *Appellant*, v. MARTHA FOUTS *et al.*, *Respondents*.

PUBLIC LANDS—OREGON DONATION ACT—WHEN TITLE INURES—
ESTOPPEL.

Under the act of congress of September 17, 1850, known as the Oregon donation act, a qualified claimant who had resided upon and cultivated the land selected for a period of four years, acquired title thereby without the same being dependent upon the issuance of a final receipt or patent, and a deed by the donee under said act, before final proof by him, was effectual to pass the full legal title to the land.

Although a person may own a third interest in a certain parcel of land, yet if he stands by at an administrator's sale and permits the whole tract to be sold as the property of a decedent, and permits the purchaser to pay for the land, take possession, improve it and pay taxes on it under claim of absolute ownership, while the owner of the third interest, neither at the time of sale nor for a period of fifteen years following, claimed any interest in the property, he is estopped from setting up ownership.

*Appeal from Superior Court, Whatcom County.*

*Harris, Black & Leaming*, for appellant.
*Bruce & Brown*, for respondents.

The opinion of the court was delivered by

ANDERS, C. J.—Appellant brought this action in the superior court of Whatcom county to obtain a decree of partition of a certain tract of land containing about eight acres, situated in the city of New Whatcom. He alleges in his complaint that he is the owner of an undivided one-third part of the premises, and that the respondents are the owners of the remaining two-thirds thereof. The respondents deny that the appellant has any interest whatever in said land, and allege ownership in themselves of the entire tract.

Both parties claim title through one Russell V. Peabody. And in order to a complete understanding of the situation of the parties with respect to each other, and of their several rights in the property involved in this controversy, a brief statement of the facts showing the origin of their respective interests becomes necessary. In December, 1852, the appellant and said R. V. Peabody concluded to engage in the milling business, and with that object in view went to Bellingham bay, selected a site for their mill on Whatcom creek, and also two tracts of land which they staked off, and upon which they erected cabins. Subsequently they induced one H. C. Brown, who was a practical mill-wright, to join them in their enterprise, and at his instance,

the three entered into the following rather ambiguous agreement:

"An article of agreement entered into this sixth day of January, eighteen hundred and fifty-three, by the following persons, H. C. Brown, Henry Roeder, & R. V. Peabody, for the purpose of erecting a sawmill and carrying on the lumbering business under the head of the Whatcom Milling Company, to be situated at Whatcom, on Puget Sound. Each member to be equal partners in said business and each one to take claims each to be joint stock, and further if either of said company shall deem it expedient to dispose of his share he shall give the company the first choice to purchase the same."

It appears that the "claims" mentioned in the contract were locations of one hundred and sixty acres of government land under and by virtue of an act of congress, commonly known as the Oregon donation act, of September 27, 1850. Brown selected a claim in the vicinity, and the other two parties continued to hold and occupy the claims originally "staked off" by them. Under this arrangement the company erected a mill and carried on the business of manufacturing lumber for about two years, taking the timber for the purpose principally if not wholly from the claims of appellant and Peabody. At the expiration of that time Brown disposed of his interest in the mill to Page, who subsequently sold it to Peabody, abandoned his donation claim and went to San Francisco, and never returned. After the withdrawal of Brown from the firm the business was conducted by the appellant and Peabody for some time, under a verbal agreement, as claimed by appellant, that the land of each should be held subject to the other's interest therein, which was to be a one-third part thereof. Both parties continued to reside upon their respective claims up to and beyond the time required by law, but the partnership, so far as the milling business was concerned, seems to have been dissolved in 1858 or 1859, by

the sale of appellant's interest therein to a third party, though partnership relations may have been subsequently resumed, but, as to that, the evidence is not clear. On January 4, 1858, R. V. Peabody conveyed, by a deed of general warranty, a portion of the claim taken up by him, and which included the land in controversy in this action, to his brother, J. E. Peabody, which deed was duly recorded. On September 17, 1862, the said J. E. Peabody, and his wife, executed to Minnie Peabody, a two year old daughter of R. V. Peabody, a quitclaim deed, which was at once recorded, purporting to convey all the right, title and interest of the said J. E. Peabody and wife in and to the tract of land sought to be partitioned in this action.

In the year 1867 the said R. V. Peabody died, and in 1869 J. E. Peabody, who was a resident of the State of Wisconsin, came to Puget Sound, for the first time, for the purpose of looking after his own and his brother's estate. While here he entered into an agreement in writing with appellant which was duly acknowledged and recorded, whereby all the matters arising under the partnership agreement between his brother and the appellant were settled; and it was, among other things, agreed that appellant and said J. E. Peabody should interchange, the one with the other, warranty deeds for the undivided one-third part of the respective donation claims taken up by appellant and R. V. Peabody. During the same year warranty deeds were executed and delivered in accordance with the terms of this agreement, and appellant thus received a conveyance of a one undivided third part of the original donation claim of R. V. Peabody, saving and excepting, by the terms of the deed, all town lots theretofore granted and conveyed in the town of Whatcom, "lying upon said donation claim." The land in question seems to be included in this deed from J. E. Peabody and wife to appellant, although

the respondents claim that it is covered by the exceptions therein set forth.

In the year 1875 the said Minnie Peabody died intestate, and in 1876 an administrator of her estate was duly appointed who, as such administrator, sold at public sale her interest in the land in litigation to the respondent, Martha Fouts. The administrator's deed was duly recorded on November 3, 1876, since which time Mrs. Fouts has been in possession and control of the premises, with no notice that appellant or any one else claimed any interest therein adverse to her, prior to the commencement of this action.

It will thus be seen that the interest of the respondents in the tract in dispute is the interest that was legally vested in Minnie Peabody at the time of her death, and no more. It cannot be disputed that the deed to Minnie conveyed to her no more than the present interest of J. E. Peabody, and, being a quitclaim, it cannot be aided or strengthened by any after acquired title of her grantor. It is claimed by the learned counsel for appellant that the deed from R. V. to J. E. Peabody, of January 4, 1858, conveyed to the latter nothing but an equitable interest in two-thirds of the premises described therein, and that the other equitable one-third interest remained in appellant by virtue of the partnership agreement, for the reason that the legal title was then in the United States, and therefore did not pass to the said grantee. But as counsel do not claim any equitable rights growing out of the partnership agreement, and which were fully settled by the agreement and exchange of deeds in 1869, the controversy is narrowed down, so far as the legal aspect of the case is concerned, to a determination of the effect of the deed of January 4, 1858, to J. E. Peabody. Did R. V. Peabody have the title to the premises he then undertook to convey to his brother, J. E. Peabody? If he did, then the respondent, Mary Fouts, who succeeded to the interest of his grantee, Min-

nie Peabody, became the owner of the land in dispute by virtue of her deed from the administrator, notwithstanding the deed to Minnie was in form a quitclaim, containing no covenants of warranty.   If the grantor has a good title it passes as effectually to his grantee by a quitclaim deed as by any other form of conveyance.  3 Wash. Real Prop. (5th ed.), 378.   It is true that at the time the deed from R. V. Peabody to J. E. Peabody was executed the former had received neither a patent nor even a final receipt from the land office, but it does not follow that he therefore had no title to the land so conveyed.   Under the Oregon donation law a patent is not necessary to pass title to a qualified claimant who has in conformity with the act resided upon and cultivated the land selected by him for-the period of four years.   That act is a grant, as well as a law, and by it the title to the land granted is transferred to the grantee as soon as he has qualified himself to receive it, by performing the necessary conditions, which are residence and cultivation for the prescribed time.   In speaking of the acquisition of title under the donation act, Chief Justice GREENE, in *Brazee v. Schofield*, 2 Wash. T., at p. 216 (3 Pac. Rep. 265), said:

"Throughout the transaction the United States holds the position of seller, and the donee that of purchaser.   As soon as the necessary selection has been made, and the prescribed residence and cultivation completed, the transaction is closed, so far as bargain and sale is concerned.   Nothing remains but to assure the vendor, or the vendor's agents, the officers of the land office, that as matter of fact the grant has become effective, by meeting a fit grantee who has rendered the proposed consideration, so that they may furnish the grantee with good and sufficient evidence of his title.   Final proof, so called, is no part of the consideration which the grantee gives, but is merely evidentiary matter, provided for the purpose of satisfying the land office that the right of the grantee is perfect and entitled him to a patent.   The act, and not the patent, is the instrument which works the transfer of title."

Such being the law, it follows that R. V. Peabody, having resided upon and cultivated his donation claim for more than four years prior to the time when he made the deed of January 4, 1858, to J. E. Peabody, had, at that time, a perfectly good and valid title to the land thereby conveyed, although the patent was not issued until some years afterwards. The patent, which was the mere evidence that title had passed from the United States, in no way enlarged the title, or estate, already vested by law in R. V. Peabody. After the conveyance of the land in controversy to Minnie Peabody, J. E. Peabody no longer had any title or interest therein, and consequently his deed to appellant was without force or effect in so far as the premises involved in this case are concerned. We, therefore, conclude that the respondents are the legal owners of the land in dispute, and that the appellant has no interest therein, and that the relief prayed for was rightly denied.

But even if it be true that the deed of 1869 from Peabody to appellant, aided by the patent subsequently issued, as matter of law conveyed to him the interest he claims, still he has no rights in this land which, at this time, a court of equity ought to enforce. According to the uncontradicted testimony of William Fouts, he, Fouts, told appellant that he intended to purchase this tract of land at the administrator's sale, and appellant then claimed no interest in it, but, on the contrary, stated that he had thought of buying it himself, but would not bid on it under the circumstances, and would like to see Fouts get it. If appellant ever had any interest in or to this land he had it then, and should have made it known. But instead of so doing he quietly stood by and permitted Mrs. Fouts to buy and pay for the property, take possession of it, improve it, and pay the taxes upon it for about fifteen years, without even a suspicion that he claimed an interest in it. During all of this time he lived in the immediate vicinity and must have

known that Mrs. Fouts claimed absolute ownership, and he now, after the lapse of all these years, and after the premises have increased a hundredfold in value, asks this court to lend him its aid in depriving her of one-third of her possessions. He comes too late. He was silent when good faith and fair dealing required him to speak, and now, when he would speak, he cannot be heard. There must be conscience, good faith and reasonable diligence to call into action the powers of the court. *Bell v. Hudson*, 73 Cal. 285 (14 Pac. Rep. 792).

Other reasons might also be given why the court should not lend its aid to appellant in this action, but we forbear to mention them.

The judgment of the court below is affirmed.

HOYT, DUNBAR, STILES and SCOTT, JJ., concur.