HERSHBERGER et al. v. BLEWETT et ux.

(Circuit Court, D. Washington, N. D.　December 7, 1892.)

No. 25.

EQUITY PRACTICE—DISMISSAL WITHOUT PREJUDICE—RIGHTS OF DEFENDANT.
　　In a suit in equity involving the title to real estate plaintiff cannot dismiss without prejudice and without the consent of defendant, on payment of costs, even though no cross bill has been filed, after issue has been joined, and after interlocutory decrees practically deciding the controversy have been entered on demurrer and exceptions to the pleadings. Chicago & A. R. Co. v. Union Rolling Mill Co., 3 Sup. Ct. Rep. 594, 109 U. S. 702, followed.

On Rehearing.

1. STATE AND FEDERAL COURTS—CONFLICTING JURISDICTION.
　　Under the laws of Washington Territory the probate court was a court of record, and the facts essential to the jurisdiction of that court to appoint an administrator were required to be set forth in a written petition filed therein. Furthermore, the letters of administration granted thereon were required to show the fact and date of the death of the intestate, his place of residence, his intestacy, and the existence within the territory of property subject to administration. On motion to dismiss an action involving the title to land brought in the federal court, on the ground that the probate court had acquired exclusive jurisdiction of the subject by administration proceedings, the record of the letters produced omitted these essential particulars, and the omission was not explained or supplied by any part of the record or by proof aliunde. Held, that there was not a sufficient showing that jurisdiction had been acquired as claimed.

2. SAME—ESTATES OF DECEDENTS.
　　The jurisdiction over the estates of deceased persons which the federal courts, as courts of chancery, have concurrently with the state courts when the other conditions of federal jurisdiction exist and the state courts have not already acquired exclusive jurisdiction, cannot be abridged, in an action by heirs involving title to land, by a law of the state which withholds from the heirs any title or right to litigate concerning the same until the administration is closed.

3. PUBLIC LANDS—OREGON DONATION ACT—SETTLERS' HEIRS.
　　The land which plaintiffs alleged to be subject to administration was alleged in the bill to have been entered on by one S., by virtue of the "Oregon Donation Act" of September 27, 1850, (9 Stat. p. 496,) and the act of February 14, 1853, (10 Stat. p. 158,) amendatory thereof; that, by occupancy and cultivation between named dates, he "became the equitable owner" thereof, and entitled to a patent; and that he then died. The patent, which did not issue until several years after his death, granted the land to "the heirs of S." Both the original and amendatory act provided for the issue of patents to the heirs of settlers who died before completing the required period of occupancy. Held, that the heirs took by purchase from the United States, and that the land was never the property of S., and was not subject to administration as such.

4. SAME—TERRITORIAL LAWS.
　　Code Wash. T. § 551, which provided that a settler's interest in a claim under said donation act might descend to his heirs as real estate, cannot affect the case, for it is void, as being an attempt to control the construction of a congressional grant.

In Equity. Suit by Sarah Hershberger and John B. Hershberger, her husband, against Edward Blewett and wife. Plaintiffs move, after issue joined, to dismiss without prejudice. Denied.

T. B. Hardin, for plaintiffs.
T. R. Shepard, for defendants.

HANFORD, District Judge. The original bill in this case was filed August 9, 1890. After hearing the arguments of counsel thereon, a demurrer to said original bill was by the court sustained. 46 Fed. Rep. 704. By leave of court an amended bill was subsequently filed, and a demurrer to the same was argued and overruled. The defendants have answered, and exceptions to their answers have been submitted to the court, and overruled. The case was at issue on the 2d day of July, 1892, on which day a general replication was filed. More than three months thereafter, to wit, October 6, 1892, the complainants filed a motion to dismiss without prejudice on payment of the costs, without assigning a reason for dismissing. No evidence has been taken, and no application has been made to the court to enlarge the time for taking evidence. The defendants oppose the motion on the ground that the plaintiffs' claim affects the title to Denny & Hoyt's addition to the city of Seattle, (the premises in which the plaintiffs claim to have an interest,) and prevents the sale of lots therein, and that any disposition of the case which will leave the controversy open to future litigation will be a serious injury to them, and to every owner of property in said addition.

By the court's decisions of the questions which have been argued, and decretal orders, the claims and rights of the parties have been adjudicated. The defendants have been put to expense in making their defenses, and, in my opinion, they are now entitled to secure by a final decree the fruits of the litigation. The motion to dismiss without prejudice I regard as a request to the court for its consent to the use of judicial process for the mere purpose of harassing and oppressing the defendants. To grant the motion, the court will have to make a record which will be equivalent to a public announcement that the plaintiffs have leave to renew in this court the attack upon the title to the premises, and a warning to every person who buys or improves a lot in said addition that the expense of defending against such attack may be forced upon him or her whenever the plaintiffs shall be so minded.

The authorities cited do not sustain the solicitor for plaintiffs in maintaining that in equity a plaintiff may dismiss without prejudice, and without consent of the defendant, at any stage of the case, upon payment of costs. In section 291 of Foster's Federal Practice the learned author says:

"After appearance, and before a decree or decretal order, a plaintiff can usually obtain a dismissal upon payment of the costs of such of the defendants as have appeared, but not if they, or any of them, would be injured thereby. * * * After a decree or decretal order, however, the plaintiff may not discontinue without the consent of all parties who have acquired rights by the decree."

The same rule is given in 1 Daniell, Ch. Pr. (5th Ed.) 793, which is another of the authorities cited by plaintiffs' solicitor; and the same chapter, on page 790, contains the very explicit statement that—

"Where, however, there has been any proceeding in the cause which has given the defendant a right against the plaintiff, the plaintiff cannot dismiss his bill as of course. Thus, where a general demurrer had been overruled on argument, Lord Cottonham was of opinion that the plaintiff could not dismiss his bill as of course, the defendant having a right to appeal against the order overruling the demurrer, which right he ought not to be deprived of on ex parte application."

House v. Mullen, 22 Wall. 42, is not in point, but the case of Chicago & A. R. Co. v. Union Rolling Mill Co., 109 U. S. 702, 3 Sup. Ct. Rep. 594, is analogous. The decision of the supreme court in that case is based upon the rules of chancery practice given in the chapter of Daniell's Chancery Practice above referred to, and other authorities in harmony therewith. After quoting from several, including the decision in Watt v. Crawford, 11 Paige, 472, and referring to a number of other authorities, Mr. Justice Woods, in the opinion of the court, says:

"The authorities cited sustain the refusal of the circuit court to allow Dumont to dismiss his bill. * * * After all these proceedings, and when the controversy between the parties was practically ended by the interlocutory decree of the court, the motion to dismiss his original bill was made by Dumont, the complainant therein. The rolling mill company insisted that if the original bill, carrying with it the cross bill, were dismissed, its claim would be barred by the statute of limitations. It would be hard to conceive of a clearer case for the application of the rules laid down by the authorities we have cited. If the court, under these circumstances, had allowed the original bill to be dismissed without the consent of the rolling mill company, it would have inflicted a palpable wrong on that company, and trifled with the administration of justice."

The remarks quoted are applicable to this case. Although no cross bill has been filed, the case is not so materially different on that account as to require the application of a different legal principle. The filing of a cross bill would not ipso facto deprive the court of discretionary power to dismiss without prejudice. No evidence has been taken, but the evidence is shut out by the rules, and the controversy between the parties has been practically ended by the interlocutory decrees upon the demurrers and exceptions to the answers. It is my opinion that the defendants are now entitled to have the cause set down for hearing upon the bill and answer, unless the court shall for good cause grant an application to enlarge the time for taking evidence according to the rules. Fost. Fed. Pr. § 292. Motion denied.

### On Rehearing.

#### (April 3, 1893.)

By leave of court the plaintiffs have renewed their motion to dismiss this suit without prejudice, and, in support of their new motion, affidavits and copies of certain records have been filed, whereby they attempt to show that in the year 1868 the probate court of King county, in which the land in controversy is situated, appointed an administrator of the estate of William A. Strickler, the original claimant of the land under the Oregon donation law, and that said probate court, and its successor, the superior court of King county, have ever since retained jurisdiction of said estate. The record of

the probate court, offered in evidence, consists of a document purporting to be letters of administration, an inventory of said estate filed by the person named as administrator, (which inventory includes said donation claim, and nothing else,) and an order for publication of notice to creditors, dated February 10, 1869; and it appears that from the date of said order until November 15, 1892, no steps were taken in the administration of said estate. On the last-mentioned date the complainant Sarah Hershberger filed a petition in the superior court of said county for a citation to said administrator to render an account. Thereupon a citation was issued, and in response to it said administrator returned an account, in which he strikes a balance by debiting himself with the land at its appraised value, and taking credit for the same amount; and he certifies that he has all of said land on hand; that no claims against the estate have been presented; and that he waives compensation for his services. The affidavits allege that said superior court is about to proceed to settle up said estate, and to close the administration thereof, and distribute said land to the heirs of Strickler, and assign dower therein to whomsoever may be entitled to such an interest, and that the complainants are about to inaugurate an administration of the estate of Mary Strickler; whose interest, as one of the heirs of William A. Strickler, they claim to have acquired through a conveyance thereof made by Mary Strickler in her lifetime to William L. Rider, deceased, the former husband of the complainant Sarah Hershberger. As reason for having an administration upon the estate of said Mary Strickler, it is said that complainants' attorneys are of opinion that the decisions of the supreme court of Washington, particularly the case of Balch v. Smith, 30 Pac. Rep. 648, have established a rule of law in this state which operates as a bar to any suit or action by a person claiming title to real estate, or an interest therein as successor to the rights of an intestate deceased person, to recover such property or interest, until the estate of such intestate shall have been administered upon, and the property distributed by a decree of the probate court.

The argument is that, by the proceedings of the probate court referred to, the land was placed in custodio legis, so that this court is deprived of jurisdiction of a suit in personam to determine between the parties the validity of their respective claims thereto; and that, even if the court is not absolutely without jurisdiction, the suit must nevertheless fail of its object, for the reason that, under the peculiar laws of this state, as declared by its supreme court, until the administration of the estates of said William A. and Mary Strickler shall have been completed, and the property distributed to their heirs, the land is liable to be sold by order of the probate court to pay the expenses of administration, and therefore no title or right to litigate concerning the same has passed to the heirs. In other words, the court cannot try the title to said property in this suit, or render a decree which will close the controversy, because the complainants are not the proper parties to sue, no legal title having become vested in them.

The showing made will not bear close inspection. It is certainly reasonable to suppose that when the court is asked to deny its jurisdiction of a case on the ground that another court has, by taking the res into its custody, acquired exclusive jurisdiction of the subject of the action, the fact of such exclusive jurisdiction in another court would be made apparent. But that has not been done in this instance. The laws of Washington Territory wisely provided that the probate court should be a court of record, and prescribed that the facts essential to the jurisdiction of said court to appoint an administrator should be set forth in a written petition, and filed, and that the main essentials, including the fact and date of the death of a person, the place of his residence at the date of death, his intestacy, and the existence of property within the territory subject to administration, should be recited in the letters of administration. The probate court was a court of special and limited jurisdiction, deriving all its powers from statutes. Being a court of record, its proceedings cannot be shown otherwise than by its record; and its jurisdiction to grant letters of administration must be denied, unless the record contains proof of the existence of all the facts essential to confer upon it jurisdiction of the particular estate, or shows affirmatively by recitals that the court found and adjudged that sufficient facts were shown. No presumption in favor of the jurisdiction arises from the mere fact that the court assumed it. Cooper v. Sunderland, 3 Iowa, 114; 1 Smith, Lead. Cas. (7th Ed., Hare & W. Notes) p. 1095; Hornthall v. Collector, 9 Wall. 560. The record of the probate court brought here does not contain a petition, or anything purporting to be one. The letters of administration do not recite or certify to any facts whatever, and the omissions are not in any manner supplied or accounted for by any part of the record, nor by proof aliunde. The pleadings in this case show that the land in controversy is now of great value, and that the defendants deraign title thereto through a judicial sale made in the year 1887. The contemplated attempt to set at naught the proceedings of a court of general and superior jurisdiction, and a sale of real estate made under the sanction thereof, by resuscitating a supposed administrator of William A. Strickler from a slumber of 25 years' duration, and by initiating administration upon the estate of Mary Strickler, who died in Ohio, 12 years ago, leaving no estate subject to administration in this state, goes a long way towards impeaching the good faith of this litigation. If, under the rule of property supposed to be established by the decision in Balch v. Smith, there be necessity for administration upon the estate of Mary Strickler, then, necessarily, there must also be administration upon the estate of the grantee of her interest, William L. Rider, who died, intestate, more than 21 years ago, his alleged interests as an heir of William A. Strickler and as grantee of Mary Strickler being the subject of this suit; and, if the pending proceedings in the superior court of King county may be looked to as furnishing a measure of the time required for settling up estates of deceased persons, future generations of litigants may wait while administrations and administrations follow each other. There is a popular

idea that, if a man attempts to dispose of his property by a will, the bulk of it will be consumed in legal contests, but, if the argument on this motion be not founded upon false premises, we may reasonably conclude that in this state, under rules of property formulated in the decisions of its supreme court, the estates of persons dying intestate must also descend to the probate court and lawyers. If it is practicable at this time to commence administrations upon the estates of persons whose deaths antedated the judicial sale, and defeat titles of vendees of the purchasers thereat, by subjecting the land to another sale to pay expenses of such administrations, land titles in this state are in general unreliable, for within the past 40 years many persons have died intestate who owned land within the state, and, because they left no creditors or uncompleted business transactions, their heirs have succeeded to their holdings without being aware of any necessity for probate proceedings. Property worth millions of dollars is under operation of such a rule exposed to attacks from schemers who may reasonably hope for a rich reward for industry in the business of probating the estates of the forgotten dead.

The laws of the state, even if as represented, cannot operate to abridge the jurisdiction of this court. By virtue of its powers as a court of chancery, it has, concurrently with the courts of the state, jurisdiction over the estates of deceased persons, when the requisite citizenship and other conditions exist. Ball v. Tompkins, 41 Fed. Rep. 486. As remarked by Judge Severens in the case just cited:

"In the exercise of this, as well as of other, branches of its authority, this court cannot invade the possession of the subject-matter of controversy already taken by the state court having concurrent authority, and in the exercise thereof; for the rule is here, as elsewhere, that the court which first acquires possession of the subject will retain it, and the power to dispose of it by its own adjudication."

The present case, however, does not require this court, in adjudicating between the parties, to disturb any substantive thing or right which another court has by its process drawn into its dominion. As the courts of the state have not acquired exclusive jurisdiction by having taken actual possession of the land in controversy, there is nothing to prevent the complainants from obtaining in this suit directly all the relief ultimately obtainable through the agency of the state courts in any style of proceeding, if it shall transpire that they are entitled to any relief.

Another question to be considered is, did William A. Strickler acquire an inheritable estate in this land, or die seised thereof? The patent is evidence that the United States did not convey the title to him, but did convey it to other persons, viz. his heirs. In the opinion upon the demurrer to the first bill of complaint filed in the case (46 Fed. Rep. 704) I stated that "presumably only the heirs of Strickler living at the date of the patent were entitled to share as beneficiaries by that grant, and they would take by purchase, as grantees of the government, and not by inheritance, as the heirs of Strickler." In their amended bill the complainants

aver that the source of the title which they claim is an act of congress entitled "An act creating the office of surveyor general of the public lands in Oregon, and to provide for the survey, and to make donations to settlers of the said public lands," approved September 27, A. D. 1850, (9 St. p. 496;) and the act amendatory thereof, approved February 14, 1853, (10 St. p. 158;) that on February 1, 1854, said William A. Strickler entered upon said land by virtue of the aforesaid acts of congress, and thereafter continuously resided on said land and cultivated the same until the year 1861, except when temporarily absent by being driven off by the Indians, and in all respects conformed to the provisions of the said original donation law and the act amendatory thereof, whereby the said William A. Strickler became the equitable owner of said land, and entitled to a patent therefor from the United States; that in the year 1861 said Strickler died intestate, and said Mary Strickler and his brothers and sisters then and thereby, by inheritance, became the equitable owners of said land; that on November 15, 1872, the United States, under and by virtue of said acts of congress, and the taking, entry, settlement upon, and the cultivation of, said land by said William A. Strickler, and upon proof having been duly made of full compliance by the said William A. Strickler with all the requirements of the various acts of congress hereinbefore referred to, caused to be issued and delivered a patent to said land to the heirs of said William A. Strickler. The pleader has avoided making a clear statement of the facts in regard to Strickler's performances pursuant to the donation law. Instead of saying that he resided upon and cultivated said land for four consecutive years or any definite period, it is only vaguely alleged that, between certain dates, and while he was not temporarily absent therefrom, he did reside upon and cultivate the land. No particulars are given as to when or by whom the final proof was made. Instead of pleading facts showing that Strickler, by fulfilling the law, became entitled to the land as a grantee thereunder, the bill avers that he conformed to the requirements of the several acts of congress whereby he became the equitable owner. This is significant. I think the court is justified in refusing to assume that Strickler ever became a grantee of the United States, since the bill stops short of alleging facts showing that he performed the acts necessary to qualify him as a grantee, and pleads as a conclusion something quite different, and shows that in fact the government issued a patent to other persons.

According to the practice of the land department, if Strickler had during his lifetime fully perfected his right to the land, the patent would have named him as the grantee; and although not issued until after his death, by virtue of the act of congress of May 20, 1836, entitled "An act to give effect to patents for public lands issued in the names of deceased persons," (5 St. p. 31, Rev. St. § 2448,) the title to the land would have inured to, and become vested in, the persons entitled to the land according to the provisions of the donation law. Davenport v. Lamb, 13 Wall. 418. It is fair to presume from the fact that the patent is not issued in the name

of Strickler that something prerequisite to the issuance thereof remained for others to do after his death, and that the patent was issued to his heirs upon a finding by the officers of the land department from proofs that they were lawfully entitled to the land. If, in fact, the conveyance to them is based upon such a finding, the land is not, and never was, part of Strickler's assets, and the title cannot be affected by a decree of distribution in probate court proceedings upon his estate. No matter what the facts may be in reality, the decision of the land department in regard thereto is controlling and determinative of rights under the donation law, as well as under other laws of the United States relating to the acquisition of titles to public land. Vance v. Burbank, 101 U. S. 514. Counsel for the complainants have argued that Strickler, by residing upon and cultivating the land as alleged in the bill, perfected his right without making the final proof required by the act, and that, notwithstanding the issuance of the patent to his heirs, the title of the heirs is by descent from Strickler, and subject to be defeated if a sale of the land should be found necessary in the course of administration of Strickler's estate; that is to say, the title passed by virtue of the donation law itself, and vested in the settler immediately upon completion of the prescribed four-years residence and cultivation, and that final proof and the issuance of a patent are not necessary to work a transfer of title from the United States to the grantee; and in support of this proposition the following authorities have been cited: Hall v. Russell, 101 U. S. 503; Roeder v. Fouts, (Wash.) 31 Pac. Rep. 432; Proebstel v. Hogue, 15 Fed. Rep. 581; Blakesly v. Caywood, 4 Or. 280; McKay v. Freeman, 6 Or. 456; Love v. Love, 8 Or. 23; Code Wash. T. 1881, § 551. I will refer to these in reverse order. Section 551 of the Code of Washington Territory is a legislative attempt to prescribe a rule of construction to be applied to the donation law in actions to recover possession of real property if either party claims the property as a donee of the United States under said law. The attempt to control the construction of a congressional grant of public land by an enactment of the territorial legislature must be futile, for the reason that the legislature was without power to add to or take from the grant. Answering a similar argument, Chief Justice Waite, in the opinion of the supreme court of the United States in the case of Hall v. Russell, supra, says:

"We have not overlooked the fact that by the territorial enactments of Oregon a settler's claim might descend to his heirs as real estate, and that his possessory rights might be disposed of by will; but all these enactments are in conflict with the act of congress, and therefore inoperative. The heirs of the settler took only such title as congress gave them. The territorial government could not add to or take from that grant."

In Love v. Love the facts were that the land in dispute was taken as a donation claim by a married couple in 1852. They resided upon and cultivated the same for over four years. Before making final proof, the husband died intestate, leaving two children. The widow made the required proofs, and thereupon a patent was issued. By this the widow took one half the land in

her own right, and the court decided that, by virtue of the provisions of the fourth section of the act, she was also entitled to one third of the husband's half, "by survivorship," and also entitled, by virtue of the laws of Oregon, to dower in the other two thirds of the husband's half. The decision is irreconcilably inconsistent with itself, as well as with the law. The claim having originated in 1852, the rights of the parties were founded upon the fifth section of the act, and the provisions of the fourth section were not applicable. The decision is to the effect that the rights of parties under said fourth section are by the amendatory act of July 17, 1854, (10 St. p. 305,) so far modified as to subject the land to the local laws of Oregon, and cause them to descend under such local laws, where the settler had in all respects complied with the donation law so as to have become during his lifetime fully entitled to receive a patent; and that a patent, when issued, relates back to the time of making final proof, and is in legal effect the same as a conveyance made, dated, and completed simultaneously with the issuance of a patent certificate upon the making and acceptance of final proof. Upon this theory that the patent only relates back to the date of final proof, and because Love's death antedated the proving up of his claim to a donation, the court awarded to his surviving widow one third of his half of the donation, in fee, by force and virtue of said fourth section; and yet the reason assigned for also awarding a dower interest in the children's portion is that "a grant to a settler under the donation act is a grant in praesenti of an estate in fee." And in the opinion it is asserted that the supreme court of the United States had affirmed a holding to that effect in the case of Barney v. Dolph, 97 U. S. 652. On the contrary, the opinion of Chief Justice Waite in that case is perfectly harmonious with his opinion in the later case of Hall v. Russell, supra, in which it is expressly held that the act cannot be construed as a grant in praesenti, and that beyond a present right to occupy and maintain possession, so as to acquire a complete title to the soil, nothing passed by virtue of the act, until all was done that was necessary to entitle the settler to a grant of the land.

The decision in McKay v. Freeman, so far as it touched the question under consideration, appears to have been based upon a statute of Oregon giving a legislative construction of the donation law similar to section 551 of the Code of Washington Territory. For reasons already given, I regard the Oregon statute and the decision based upon it equally unsound.

In Blakesly v. Caywood the court held that an heir of an alien settler who had lived upon the land in dispute, and cultivated it for the prescribed period, and had declared his intention to become naturalized, had a right to the land superior to that of an adverse claimant who had obtained a patent. The facts of the case, as recited in the opinion, show that it is not in point, for it was not necessary to the decision to hold that the heir took by inheritance. The decision can be upheld on the ground that the heir was fully entitled to the land in her own right, as a donee of the government.

Proebstel v. Hogue is not in point. In that case the second wife of Proebstel, after his death, claimed the wife's half of a donation claim to which the husband and his first wife had acquired a perfect title, final proof having been made while the first wife was living. The patent was issued after her death, but she was named therein as a grantee. By virtue of the act of 1836, above cited, the title to her half of the land became vested in her heirs. Judge Deady held that the title was granted by the fifth section of the act, and that the husband was not by virtue of the fourth section entitled to take the wife's half upon her death, and therefore no title to that part of the land descended through him to his second wife.

The opinion of Judge Deady in the case of Cutting v. Cutting, 6 Fed. Rep. 259, comes nearer to the point under discussion. In that case Cutting had done everything required by the terms of the donation law to perfect his right, including the making of final proof, but had not paid the land-office fee for issuing a patent certificate. After his death his administrator paid the fee, and thereupon the patent was issued to the widow for a designated half, and to the heirs at law of said Cutting for the other half of the land. Upon said facts Judge Deady held that the interest of Cutting "in his donation, whatever it was, terminated with his life, and that the land was not thereafter liable for his debts, or subject to sale by his administrator, but thereupon became and was the absolute property of his wife and children, as the direct donees and grantees of the United States. In other words, they took by purchase, and not descent."

The reported decision of the supreme court of this state in the case of Roeder v. Fouts, 31 Pac. Rep. 432, has a syllabus indicating that the court upheld a sale of part of a donation claim by an administrator of the deceased settler. But the facts recited in the opinion are different. In the opinion there is an argument which in some respects favors the contention of counsel for the complainants in this case, the most of which is a quotation from the opinion of Chief Justice Greene in the case of Brazee v. Schofield, 2 Wash. T. 209;[1] and the pith of it is that the act is a grant as well as a law, and passes title by its own force upon compliance by the settler with its provisions; that four years' continued residence and cultivation is full compliance; that final proof is only essential for the purpose of obtaining a patent; and that a patent is not a conveyance, but mere evidence of a transfer of title. The point which the case decides is that a warranty deed made by a settler after four years' residence upon the land, and before proving up, was valid and effective to convey the land. The court also fortified its decision by finding that the party making the attack was barred from claiming the land by an estoppel and laches. In the case of Brazee v. Schofield, 124 U. S. 495, 8 Sup. Ct. Rep. 604, the judgment of the supreme court of Washington Territory in the same case was affirmed; but the opinion of that court, by Mr Justice Field, gives a construction to the donation law quite different from the

[1] 3 Pac. Rep. 265.

construction given by Chief Justice Greene, in so far as the latter seems to support the dictum in Roeder v. Fouts, that the conditions necessary to qualify a grantee to receive title under the act "are residence and cultivation for the prescribed time." Mr. Justice Field shows the essential quality of other requirements of the act by saying:

"It is undoubtedly true that the donation act requires for the completion of a settler's right to a patent not only that he should reside upon the land and cultivate it for four years, but that he should notify the surveyor general of the precise land he claims. The object of the law was to give title to the party who had resided upon and cultivated the land, and who was therefore in equity and justice better entitled to the property than others who had neither resided upon nor cultivated it. But it was also of importance to the government to know the precise extent and location of the land thus resided upon and cultivated. It was necessary to enable the government to ascertain what lands were free from claims of settlers, and subject to sale or other disposition."

The reasons given in this extract for holding the requirement as to notice to be imperative apply with equal force to the provision requiring final proof. Notice of a claim cannot be of greater importance than definite information of the ripening of a mere inchoate right into a perfect and vested right.

I find nothing in Hall v. Russell to give colorable support to the argument of complainants' counsel except a quaere in the syllabus, suggested by the following passage in the opinion:

"Whether the fee passed out of the United States before the claim was 'proved up' it is not necessary now to consider. For the purposes of the present suit it is enough to show that the occupant got no title himself, beyond a mere right of possession, until he had completed his four years of continued residence and cultivation."

I think that an answer to this quaere, in harmony with all the decisions of the national courts, is found in the general principle that title does not pass from the United States by a conditional grant of public land so long as the patent is withheld, and any act required of the grantee as a condition of the grant remains uncompleted. Railroad Co. v. McShane, 22 Wall. 444; Shepley v. Cowan, 91 U. S. 330; Colorado Co. v. Commissioners, 95 U. S. 265.

In Wilcox v. Jackson, 13 Pet. 498, the supreme court stated the rule even broader than I have stated it. In the opinion of the court by Mr. Justice Barbour it is said "that, with the exception of a few cases, nothing but a patent passes a perfect and consummate title. One class of cases to be excepted is where an act of congress grants land, as is sometimes done, in words of present grant. * * * The general rule is what we have stated, and it applies as well to pre-emptions as to other purchases of public lands."

The donation law prescribes the conditions under which, after the death of the settler, his rights descend to his heirs, so that they become entitled to take as grantees in his place. Section 8 of the original act provides that, in case of a settler's death before expiration of four years' continued possession, his heirs may become so entitled, upon proof of compliance with the conditions of the act by the settler up to the time of his death; and the first section of the amenda-

tory act of February 14, 1853, contains a similar provision. In both sections the right of heirs to make proof and become entitled to a patent is made to depend upon the death of the settler before the expiration of the prescribed period of continued possession. I reiterate, therefore, that from the fact of the issuance of the patent to Strickler's heirs a presumption arises that the officers of the land department must have found facts to bring the case within the provisions of one or the other of said sections, and that the heirs of Strickler were considered by the land department to be the qualified grantees, and entitled to receive said patent. This presumption has not been overcome by the facts appearing in the case, nor by the authorities which I have been required to review. It remains as the controlling feature of the case, and the land which is the subject of this suit did not become Strickler's property. Therefore an administrator of his estate cannot lawfully meddle with it. A dismissal of this suit without prejudice will make a record which will be equivalent to a public declaration that the property is menaced by the claims of the complainants, and liable to be again brought into litigation whenever it may be their pleasure to do so. I consider that such a disposition of it would be unjust. Motion denied.