Argued July 7, affirmed July 27, rehearing denied September 28, 1920.

## BAILEY *v.* OREGON-WASH. R. & N. CO.

### (191 Pac. 782.)

**Public Lands—Donation Land Claimant Who Failed to File Claim Held to Obtain no Title.**

1. Settler on donation land who remained thereon for four or five months prior to his death without designating his claim or filing upon the land, and without making any notification thereof with the proper land officers, as required by the Donation Act, had no title to the land which would pass to his heirs by descent.

**Public Lands—Donation Land Claimant's Heirs Could not Take Land as Purchasers Without Filing Claim Designating Boundaries or Proving Settlement.**

2. Where plaintiff's ancestor settled on donation land and remained thereon for four or five months prior to his death, without

filing claim or notifying proper land officers thereof, claimants could not take the land by purchase under the Donation Act without notifying the Land Department of claim or designating its boundaries, or making proof of his settlement as required by the act.

From Multnomah: ROBERT TUCKER, Judge.

Department 2.

This is a suit brought by the plaintiffs, as heirs of one Henry Ploch, to have the defendants declared to be trustees of certain lots situated in the City of Portland, Oregon, which it is claimed were part of a donation land claim settled upon by the said Henry Ploch in 1852.

It is alleged that Ploch was a qualified donation land claimant, and that he came to Oregon in the spring of the year 1852, and settled upon 160 acres of land lying along the Willamette River in what is now North Portland, on the first day of November, 1852; and that he remained upon the land between four and five months until he died on the twenty-first day of March of the succeeding year.

At the time of the alleged settlement, the land had not been surveyed, and it was not surveyed until August after the death of Ploch. It is not claimed that Ploch ever filed any notification on the claim with the surveyor-general before his death, or that any notification was filed afterward, or that Ploch or his heirs ever made proof of settlement, as required by the Donation Act.

The plaintiffs allege, however, that the reason why these things were not done was because the land had not been surveyed at the time of the death of Ploch, and could not therefore be designated; and that after his death the heirs had no knowledge of the fact that he had settled upon the claim, or that he had any rights under the donation law (Act Cong. Sept. 27,

1850, c. 76, 9 Stat. 496), until shortly before the beginning of this suit.

After the death of Ploch, one Elizabeth Thomas filed on the land in question, as a donation claim, and finally made proof upon the same, and the land was patented to her.

The defendants hold by mesne conveyances from said Elizabeth Thomas, and it is alleged that she took the land with knowledge of Ploch's prior claim, and that the defendants also took conveyance with such knowledge. The complaint alleges fraud on the part of Mrs. Thomas in securing her patent, and asks that the defendants be declared trustees of the property in favor of the plaintiffs, and that plaintiffs be decreed to be the equitable owners of the land.

The defendants filed a demurrer to the complaint, which was sustained by the court. From a judgment on the demurrer, plaintiffs appeal to this court.

AFFIRMED.

For appellants there was a brief over the names of *Mr. George Arthur Brown* and *Mr. Thomas Mannix,* with an oral argument by *Mr. Brown.*

For respondents there was a brief over the names of *Mr. John F. Reilly* and *Mr. A. C. Spencer,* with an oral argument by *Mr. Reilly.*

BENNETT, J.—There are many grounds upon which, as it seems to us, the demurrer of the defendants was properly sustained. We shall notice only one, which, as it seems to us, is conclusive of the case. There is no allegation in the complaint that Henry Ploch, before his death, had ever filed upon the land, or put his claim upon record with the

surveyor-general, or in the United States land office, and although more than sixty-five years had elapsed after his death before the bringing of this suit, there is no allegation that his heirs had in any way complied with the provisions of the Donation Act, or made any notification to the proper land officers of the claim of their deceased ancestor.

At the time the land was surveyed, and up to the time of the filing by Mrs. Thomas, the land appeared upon the government records as public land of the United States, subject to claim by any person under its land laws. Save and except the claim of Mrs. Thomas, it would either have been taken by someone else or would still have appeared as public land, up to the beginning of this suit.

1. We do not think that Henry Ploch by merely settling upon the land, without designating his claim in any way, or making any notification thereof, obtained any title to the land, which would pass to his heirs by descent.

2. Neither do we think his heirs could take the land by purchase, under the Donation Act, without notifying the Land Department of his claim, or pointing out or designating its boundaries in any way, or making proof of his settlement, as required by that act.

It would be a dangerous holding indeed, and fraught with evil consequences, to say that a man, under the Donation Act, could, by simply building a cabin upon an unmarked and undesignated tract of land, and without notifying the government in any way of his claim, secure such right to the land that the government could not accept other filings upon or effectually convey the same; and that his heirs could come in many years afterward, as in this case,

and assert his title, and disturb the title of the grantees of other claimants, who had settled upon the land as government land, and obtained patent thereto from the government, and transferred their rights and title to their successors.

Up to the time of the survey by the government the donation claimant could not, in the nature of things, ordinarily, know the definite boundaries of the tract upon which he was settling—certainly he could not unless these boundaries were marked out upon the land in some way, and it is not alleged or claimed that anything of the kind was done by Ploch. Up to the time that the claim was marked out and designated by survey, the settlers' rights were necessarily inchoate and more or less in the nature of a float.

It is alleged in the complaint that Ploch's claim was bounded by the Finice Caruthers donation land claim on the north, the meander line of the west shore of the Willamette River on the east, the James Terwilliger donation land claim on the south, and on the west by a line 3,937.28 links from the said meander line of the said west shore of the Willamette River, and running parallel with the said meander line between the north boundary of the said James Terwilliger donation land claim and the south boundary of the said Finice Caruthers donation land claim.

But it is clear that this description is an afterthought, and could not have been the definite boundaries of the claim of Ploch at the time he settled upon the land, for at that time the Caruthers donation claim on the north, and the James Terwilliger donation claim on the south, were themselves unsurveyed and undefined. Indeed, it is alleged in the

complaint that the line of the Caruthers claim was *afterward* run by the government surveyor, in such a way as to run through the Caruthers house.

The meander line designated in the complaint along the Willamette River had not at that time been located, and of course it was impossible to know just where it would be located by the government; and the opposite line, which is now alleged to have run parallel with the meander line, was, of course, equally uncertain.

It is now well settled that a donation land claimant under such circumstances obtains no definite right to the land until his notification has been filed, and until he has otherwise complied with the law, and that the settler acquired no right to the land which would pass to his heirs upon his death, until he had completed his four years of residence.

In *Hall* v. *Russell,* 101 U. S. 503, 513 (25 L. Ed. 829, see, also, Rose's U. S. Notes), it is said:

"The object of Congress undoubtedly was to allow a settler's heirs to succeed to his possession, and *thus keep his rights alive.* But for some such provision all rights of the settler would have been lost by his death. As the law required full four years' residence by the person who claimed the grant, if no provision had been made for a continuance of his possession, the land would have become vacant on his death and open for a new settlement by a new settler, if the law authorizing new settlements still remained in force. Hence it was provided that the possessory rights of a deceased settler should go to his heirs, and that they might get the land *on making the requisite proof,* without further residence and cultivation of their own. Their title to the land was to come, not from their deceased ancestors, but from the United States."

In *Brazee* v. *Schofield*, 124 U. S. 495 (31 L. Ed. 484, 8 Sup. Ct. Rep. 604, see, also, Rose's U. S. Notes), it is said by Mr. Justice FIELD:

"It is undoubtedly true that the Donation Act requires for the completion of the settler's right to a patent, not only that he should reside upon the land and cultivate it for four years, but that *he should notify the surveyor general of the precise land he claims*. The object of the law was to give title to the party who had resided upon and cultivated the land, and who was, therefore, in equity and justice better entitled to the property than others who had neither resided upon nor cultivated it. *But it was also of importance to the government to know the precise extent and location of the land thus resided upon and cultivated*. It was necessary to enable the government to ascertain what lands were free from claims of settlers, and thus subject to sale, or other disposition." (Italicizing above interpolated.)

In *Fitzpatrick* v. *Du Bois*, 2 Sawy. 434 (Fed. Cas. No. 4842), it is said:

"This notification by the occupant was what constituted him a 'settler,' and his occupation thereby became 'a settlement' under the act, as well as ·in fact. Doubtless it should be held to relate back to the beginning of his occupation, or to the passage of the act, when the occupation commenced prior thereto. But without this notification the occupant could never acquire any legal relation to the land, or the government be deprived of its ownership thereof."

We think the reasoning of these cases in relation to the necessity of notification and of proof of claim applies to the heirs as well as to the original claimant.

The plaintiffs offer as an excuse for their failure to comply with the law, the death of the claimant and

their lack of knowledge of his claim. This may be a moral excuse which would relieve them from a charge of negligence, but it is not a compliance with the law, which would give them title to the land.

In this regard, the language of the United States Supreme Court in *Frisbie* v. *Whitney,* 76 U. S. (9 Wall.) 196 (19 L. Ed. 669, see, also, Rose's U. S. Notes), is pertinent:

"The argument is urged with much zeal that because complainant did all that was in the power of anyone to do toward perfecting his claim, he should not be held responsible for what could not be done.

"To this we reply, as we did in the case of *Rector* v. *Ashley,* 6 Wall. 142 [18 L. Ed. 733], that the rights of a claimant are to be measured by the acts of Congress, and not by what he may or may not be able to do, and if a sound construction of these acts shows that he had acquired no vested interest in the land, then, as his rights are created by the statutes, they must be governed by their provisions, whether they be hard or lenient."

At the time of Ploch's settlement and death, this land was no doubt of little value; but in the long interval since then, it has become part of a great city —has been laid off into lots and blocks; streets have been laid out and improved—and we may assume that it has become valuable, and that portions of it have passed into many different hands.

To permit these heirs of his to come in now, at the end of sixty-five years, and disturb all these titles, upon the ground that they did not know before that their ancestor had ever claimed the land, would be intolerable.

The judgment of the court below is affirmed.

AFFIRMED. REHEARING DENIED.

MCBRIDE, C. J., and BEAN and JOHNS, JJ., concur.