[No. 4558.   Decided March 28, 1903.]

WEST SEATTLE LAND AND IMPROVEMENT COMPANY, Appellant, v. NOVELTY MILL COMPANY, Respondent.

TRIAL — DISCHARGE OF JURY.

Where there are no disputed facts in the evidence, but merely questions of law for the court are presented, the discharge of the jury is proper, since there is nothing for it to pass upon.

CORPORATIONS — CONVEYANCES — AUTHORITY OF OFFICERS TO EXECUTE — PRESUMPTIONS.

The authority of officers of a corporation to execute a deed will be conclusively presumed, although there was no express authorization therefor, when it appears that the board of directors had by resolution given the president general authority to dispose of the corporate lands, for which he and the secretary were empowered to execute the proper deeds in behalf of the corporation; that the president sold certain lands under contract that the purchaser should erect thereon a flouring mill of certain capacity, which was done in accordance with the contract; that the officers and stockholders knew all about the transaction at the time, but did not attempt to repudiate the authority until long after the benefits of the conveyance had been received by the corporation.

SAME — ESTOPPEL.

Where the officers of a corporation, under a general authorization to sell lands, sold and conveyed certain lands by quitclaim deed, in consideration of the expenditure of a large sum of money in improving same, and, on the discovery that the corporation had no title, a guaranty was given by the officers that title would be acquired from the state and transferred to the

purchaser, and in reliance thereon the purchaser made the improvements with the full knowledge of the officers and stockholders of the corporation, who made no attempt to repudiate the transaction until long afterwards, the corporation is estopped from asserting ownership under the after-acquired title, on the ground that the transactions of the officers were in excess of their authority.

**QUITCLAIM DEED — CONVEYANCE OF AFTER-ACQUIRED TITLE.**

A quitclaim deed which recites that it remises, releases and quitclaims to the grantee certain lands, "to have and to hold all and singular the said described premises, together with the appurtenances unto the said party of the second part and to his heirs and assigns forever," is sufficient to pass an after-acquired title, under Bal. Code, § 4521, which provides that a statutory quitclaim deed does not convey after-acquired title, "unless words are added expressing such intention," and under Id., § 4538a, which provides that whenever any person sells land in the state without having title at the time, and afterwards acquires a title thereto, "such title shall inure to the benefit of the purchasers."

Appeal from Superior Court, King County.—Hon. WILLIAM R. BELL, Judge. Affirmed.

*Ira Bronson,* for appellant.

*Struve, Allen, Hughes & McMicken,* for respondent.

The opinion of the court was delivered by

MOUNT, J.—The appellant brought this action in the lower court to eject the respondent from the possession of certain real estate upon which is situated a flouring mill and other valuable property. The complaint alleges title in appellant and right of possession, and that the respondent wrongfully withholds possession from appellant. The answer denies the allegations of the complaint, and for a first affirmative defense alleges title, possession, and right of possession in respondent; for a second affirmative defense alleges facts which respondent claims estop appellant from claiming any right or title to the land described.

WEST SEATTLE LAND, ETC., CO. v. NOVELTY M. CO. 437

Issue was joined upon the facts pleaded, and the cause came on for trial before the court and a jury. After hearing all the evidence, the court, upon motion of respondent, discharged the jury and dismissed the action. Plaintiff appeals.

There are no disputed facts in the evidence. For this reason, there was nothing for the jury to pass upon. The questions are questions of law for the court, and the jury was properly discharged. The facts are substantially as follows: The appellant is a corporation, with general powers, among which are to buy, own, sell, lease, and otherwise dispose of lands, and to lay out and plat town sites upon its lands, and improve the same in any way it may deem proper. The respondent is a milling corporation. In the year 1892 the appellant was the owner of a large tract of land fronting on Puget Sound, in what is now known as "West Seattle." The tract of land had been platted into town lots which were offered for sale. The appellant desired the original incorporators of respondent company to construct a flouring mill on this town site, and agreed to deed the land in question to respondent's grantors for a site for such mill, provided a mill with a capacity of 300 barrels of flour per day should be constructed within a period of six months. This was agreed to between appellant and respondent's grantor. The lots in question were below the line of ordinary low tide, and below the meander line as established by the United States government, but within the plat of the town site as laid out and filed for record by the appellant. The appellant executed a quitclaim deed to respondent's grantor, and placed the same in escrow with a Seattle bank to abide the construction of the mill as agreed upon. The original grantor named in the deed thereupon organized the respondent cor-

poration, which proceeded to construct the flouring mill in accordance with the agreement. Subsequently to the placing of the deed in escrow, it was discovered that the appellant did not have title to the lands in question, by reason of the fact that the same were tide lands. But the president of the appellant company, who was also the general manager thereof, entered into a written agreement with respondent to the effect that appellant company would acquire title to the property from the state of Washington as soon as the same could be done, and convey a perfect title to respondent. Thereafter respondent erected the mill as agreed, in a substantial manner, at a cost of $50,000, within the time agreed. When the same was finished, and on or about November 12, 1892, appellant, by its general manager, accepted the same, and agreed that the mill was constructed as required; and thereupon the deed was delivered to respondent, who has ever since been in possession of the lands conducting and operating its milling business. None of the officers or stockholders of either company had any interest in the other company. Thereafter, on August 20, 1900, the appellant acquired title to the lands from the state, but refused to perfect the title in respondent. The officers of appellant company who refused to comply with the contract are not the same officers who entered into the contract with the respondent. Appellant, prior to the bringing of the action, demanded possession of the property from respondent, which demand was refused. Thereupon this action was begun.

The appellant maintains (1) that there was no authority for the agreement or for the execution of the deed by the officers of appellant to the respondent, and (2) that the deed did not convey the subsequently acquired title. There is no evidence whatever in the record to show that the

officers of the company who executed the deed and contract were not authorized to do so. There is, however, a by-law of appellant, which reads as follows:

"No deed, instrument or contract of any description purporting to be made on behalf of the company, except in relation to the ordinary routine of the business of the company shall be valid unless authorized by the board of trustees, and no instrument shall be deemed to have been duly executed on behalf of the company unless it shall be sealed with the corporate seal, signed by the president and attested by the secretary."

There is no record expressly authorizing the officers to enter into the contract named, except the following, which appears on the minutes of the meeting of the board of trustees of appellant company of September 18, 1888, and which was construed by the officers of said company as being authority for the execution of the deed and contract:

"Office of the West Seattle Land and Improvement Co.,
                Seattle, W. T., September 18, 1888.

"At a special meeting of the trustees of the West Seattle Land & Impt. Co. held at the company's office this day, there were present the following named persons: H. G. Struve, Leigh S. J. Hunt and Thomas Ewing. Upon motion of Struve, seconded by Hunt, the following resolution was introduced and unanimously carried: 'Resolved. That the president of the West Seattle Land and Improvement Co. be and is hereby authorized and empowered to grant, bargain, sell and dispose of any lands belonging to this company wheresoever situate, in such parcels or lots and for such price in cash or credit, and upon such terms or conditions and to such person or persons, as he may deem fit and proper, and that said president be and is hereby further authorized and directed to make, execute, acknowledge and deliver as and for the corporate act and deed of this company to purchasers of said lands, all deeds and conveyances containing such covenants as said president may deem proper, and which may be necessary to

rest the title of lands sold by virtue of this resolution in the purchaser according to the terms of sale, and that all deeds so executed by said president be attested by the corporate seal of this company, and the signature of the secretary, and that, in the absence of the president from the principal place of business of this company, the vice president of the company be and he is hereby authorized and directed to make, execute, acknowledge and deliver deeds to all lands sold by said president under this resolution in the same manner and with the same force and effect as the president is authorized to do by this resolution.' "

This resolution is a general authority to the president to dispose of lands belonging to the appellant company, and was broad enough, and was no doubt intended, to authorize the president to execute any instrument necessary for the conduct of its business without express authorization for any particular instrument. It was supposed at that time that these lands belonged to the appellant company. They were platted into lots and blocks the same as other lands, and were offered for sale by the company. This court said in *Carrigan v. Port Crescent Improvement Co.*, 6 Wash. 590 (34 Pac. 148):

"Under these circumstances it will be presumed that it was the contract of the corporation until the contrary is made to appear. When a corporation names some person as its manager, and as such allows him in a large measure to control all its business transactions, it must be held responsible for the acts of such manager in the name of the company until it has been affirmatively shown by it that as a matter of fact such acts were unauthorized."

This was followed in *Anderson v. Wallace Lumber & Mfg. Co.*, 30 Wash. 147 (70 Pac. 247). In Abbott's Trial Evidence (2d ed.), at p. 44, the rule is stated as follows:

"The seal being thus proved, upon a corporate deed regular on its face, and apparently executed in due form, the

law presumes that the deed was executed and the seal affixed by competent authority from the corporation. Hence, alike where the deed bears a due certificate of acknowledgement, etc., and where the seal is proved or judicially noticed, the law presumes that the deed was duly executed and the seal affixed by a competent authority in pursuance of whatever power the corporation has, or may be presumed to have, to convey; and it is not necessary for the party claiming under the instrument to produce the resolution or by-law giving authority, but the burden is on the party resisting it to show that the officers signing were not authorized to convey, or that those having custody of the seal were not authorized to affix it."

Under these authorities, and where it appears, as it does in this case, that there was no repudiation of the authority until long after the benefits had been received by the appellant, and where respondent had acted on the contract, and where the stockholders and officers knew all about the transaction, the authority will be conclusively presumed.

It is next urged that the deed did not convey an after-acquired title. The deed is as follows:

"West Seattle Land and Imp. Co.

to                           Quitclaim Deed.

George B. Landers.

This Indenture made this 21st day of May in the year of our Lord one thousand eight hundred and ninety-two, by and between the West Seattle Land and Improvement Company, a corporation duly incorporated under the laws of the state of Washington, having its principal place of business in the city of Seattle, state of Washington, party of the first part, and George B. Landers, of the city of Seattle, King county, state of Washington, the party of the second part, Witnesseth:

"Said party of the first part for and in consideration of of the sum of one dollar and other valuable considerations to it in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged do by these pres-

ents remise, release and forever quitclaim unto the said party of the second part, his heirs and assigns, all those certain lots, pieces or parcels of land situate in the county of King and state of Washington, particularly described as follows, to-wit: All of lots numbered twelve (12), thirteen (13), fourteen (14), fifteen (15), sixteen (16), twenty-one (21), twenty-two (22), twenty-three (23), twenty-four (24), and twenty-five (25), in block numbered eighty-three (83), and as shown and designated on the third plat of West Seattle as laid out and platted by the West Seattle Land and Improvement Company, which has been duly recorded in the county auditor's office of said King county in the record of plats of said county, to which said record reference is hereto made.

"Together with all and singular the tenements, hereditaments and appurtenances and particularly the littoral and riparian rights thereto belonging and the reversion and reversions, remainder and remainders, rents, issues and profits thereof.

"To have and to hold all and singular the said described premises, together with the appurtenances unto said party of the second part and to his heirs and assigns forever.

"In witness whereof the said party of the first part, on this 21st day of May, A. D. 1892, has caused these presents to be signed in its corporate name by Thomas Ewing, its president, and to be attested by M. S. Bates, its secretary, and has caused its corporate seal to be hereto affixed, all by virtue of a resolution of the board of trustees of said West Seattle Land and Improvement Company, duly passed and adopted on the 18th day of September, 1888.

(Signed)   West Seattle Land and Improvement Co.

By Thomas Ewing, Its President,   (Seal)

West Seattle Land and Improvement Co.

Attest:  M. S. Bates, Its Secretary.   (Seal)

(Duly witnessed and acknowledged.)

This deed was more than a quitclaim deed under the statute. It is true, as argued by appellant, that a statutory quitclaim deed does not convey after-acquired title unless

words are used expressing such intention.    Bal. Code, § 4521.    The statute, at § 4538a, Bal. Code, provides as follows:

"Whenever any person or persons having sold and conveyed by deed any lands in this state, and who, at the time of such conveyance, had no title to such land,  .  .  . shall acquire a title to such lands so sold and conveyed, such title shall inure to the benefit of the purchasers. . . . "

The deed in question purports to convey more than a release of the grantor's claim at that time.    It conveys the land itself, for it recites that the party of the first part does remise, release, and forever quitclaim to the party of the second part the lands described, "to have and to hold all and singular the said described premises, together with the appurtenances unto the said party of the second part and to his heirs and assigns forever."    In *Ankeny v. Clark,* 1 Wash. 549 (20 Pac. 583), the supreme court of the territory said:

"  .  .  .  under the statutes of our territory, a quitclaim deed is just as effectual to convey the title to real estate as any other form of deed, and a grantee in a quitclaim deed is entitled to the same presumptions as to *bona fides,* and has the same rights, as a grantee in a deed of general warranty.    This is undoubtedly true of a quitclaim deed which purports on its face to convey, not merely an interest, but the real estate itself."

See, also, *Taggart v. Risley,* 4 Ore. 235; *Garrett v. Christopher,* 74 Tex. 453 (12 S. W. 67, 15 Am. St. Rep. 850); *Balch v. Arnold,* 9 Wyo. 17 (59 Pac. 434); *Field v. Columbet,* 4 Sawy. 523 (Fed. Cas. No. 4,764); *Spies v. Neuberg,* 71 Wis. 279 (37 N. W. 417, 5 Am. St. Rep. 211).    This deed conveyed upon its face a subsequently acquired title.    Under the evidence in the case, the ap-

pellant, we think, is estopped from asserting any title to the property. Soon after the making of the deed, and as a part of the contract, the appellant company, through its general manager and president, made a written guaranty to the respondent before the respondent company proceeded to the erection of the mill, that it would acquire a perfect title to the said lands as soon as it could do so, and would thereafter convey the same to respondent. This agreement was for the benefit of the appellant, who sought the grantor out and importuned him to erect the mill upon the town site of appellant in order to enhance the sale and price of its town lots. Acting upon this assurance, the respondent invested a large amount of money and erected a substantial improvement, and waived its right to purchase the legal title to the lands from the state, relying upon the appellant's promise to convey good title when it could do so. This was well known by all the officers and stockholders of the appellant company, and no word of disapproval was heard until after respondent in good faith had acted on the agreement and spent large sums of money. Now, when appellant has acquired the title it seeks to rescind its agreement and to take unto itself respondent's valuable property. Such conduct would not be tolerated between individuals. It should not be tolerated between corporations.

The judgment is affirmed.

FULLERTON, C. J., and HADLEY, DUNBAR and ANDERS, JJ., concur.