[No. 6643.   Decided July 15, 1907.]

CLARA E. SYLVESTER *et al.*, *Appellants*, v. THE STATE OF WASHINGTON *(Substituted as defendant for A. B. Allison et al., Defendants), Respondent.*[1]

EVIDENCE—DOCUMENTARY EVIDENCE—RECORDS OF LAND OFFICE.   A certified copy of a notification to the surveyor general of intent to claim land settled upon as a donation claim, from the general land office at Washington, D. C., establishes the date of the giving of such notice, clearly appearing thereon, although the local surveyor general's and register's offices contain no record of the filing thereof.

TERRITORIES—PUBLIC BUILDINGS—DEEDS—GRANTEE.   A territory specially authorized to locate and establish the seat of government for which a Federal appropriation was made for the erection of suitable buildings, has power to acquire and hold land for such purpose, and a deed of land therefor is not void for want of a grantee capable of holding the land.

SAME—POWERS—PUBLIC LANDS—GRANTS — STATUTES — CONSTRUCTION.   The construction of a congressional authority to a territory to locate and establish the seat of government, with respect to the acquisition of land therefor, is not affected by the fact of a later statute, in no way connected with the earlier one, making appropriation for securing sites and erecting a temporary capitol and for a penitentiary.

SAME—DEEDS—ESTATE CREATED.   A deed to a territory for a capitol site conveys an estate in fee which passes to its successor, the state, without the use of words of succession in the grant.

[1]Reported in 91 Pac. 15.

PUBLIC LANDS—DONATION ACT—TRANSFER BEFORE PATENT. Under 10 U. S. Stat. at Large, 305, § 2, repealing the provision in the Oregon Donation Act that all contracts for the sale of the lands prior to issuance of patent shall be void, a conveyance of a donation claim could be made before issuance of the patent provided the claimant had resided on the land for four years.

EVIDENCE—PAROL—DEEDS—CONDITION. It is inadmissible to prove that by a parol contemporaneous contract an absolute deed to a territory was made on condition that the territory should erect and maintain a capitol building on the land.

ESTOPPEL—BY DEED—CONDITIONS—STATES. Where the state has absolute title to land held for a capitol site, but to correct a supposed defect in the title, took a quitclaim deed from the former owners, conditional that such deed should be void if the capitol was located elsewhere, the state is not estopped, by the condition in the second deed, to assert its title under the first deed after breach of such condition; as it was only provided that the quitclaim should be void, not that the whole title should revert.

DEEDS—DESCRIPTION—CERTAINTY. A description in a deed of land in a certain donation claim, naming the section, township, range, and county, is not void for uncertainty in that it omitted the name of the town in stating the point of commencement at the corner of certain streets, as sufficient remains to accurately locate the land.

APPEAL—REVIEW—THEORY OF CASE. An action to quiet title tried in the court below as if upon sufficient pleadings, must be tried upon the same theory on appeal.

Appeal from a judgment of the superior court for Thurston county, Albertson, J., entered September 11, 1906, upon findings in favor of the defendant, after a trial on the merits before the court without a jury, in an action to quiet title. Affirmed.

*George Marvin Savage* and *May L. Sylvester*, for appellants.

*The Attorney General* and *A. J. Falknor, Assistant*, for respondent.

FULLERTON, J.—The appellants brought this action against the State of Washington to recover a tract of land, containing some ten acres, held by the state as a part of its capitol grounds. The appellant Clara E. Sylvester is the

wife, and the appellant May L. Sylvester is the daughter, of Edmund Sylvester, deceased, and together they constitute his sole heirs at law. The land in question is a part of a larger tract patented by the government of the United States to Edmund Sylvester. The appellants claim the land as his heirs at law, contending that the muniments of title through which the state holds the property are either void and of no effect, or are subject to conditions which have been forfeited by the state.

Edmund Sylvester acquired title to the land under the act of Congress of September 27, 1850, commonly known as the Oregon Donation Act. 9 U. S. Stat. at Large, 496. The record shows that he made settlement upon it in 1850, filed his notification of such settlement with the surveyor general of Oregon in February, 1854, made final proof of his settlement and continuous residence on July, 1858, and received patent for the land in May, 1860.

On March 2, 1853, Congress passed an act creating the territory of Washington. The act specifically described the boundaries of the new territory, and provided for it a complete scheme of internal government. As a part of the governing body, it created a legislative assembly, and gave it power at its first session, or as soon thereafter as it should deem expedient "to locate and establish the seat of government for said territory, at such place as [it might] deem eligible; which place, however, shall thereafter be subject to be changed by said legislative assembly"; and the sum of five thousand dollars was appropriated out of the general treasury "and granted to said territory of Washington to be there applied by the governor to the erection of suitable buildings at the seat of government." 10 U. S. Stat. at Large, 172, *et seq.* The legislative assembly exercised the power thus granted at its second session. On January 9, 1855, it passed the following act: (Laws 1854-5, p. 5.)

"Sec. 1. Be it enacted by the Legislative Assembly of the Territory of Washington, That the seat of Government of

this Territory be, and hereby is established and located on a certain piece or parcel of land on the land claim of Edmund Sylvester, in the county of Thurston, in section twenty-three, township eighteen north, range two west, containing ten acres, and more particularly described as follows: Commencing at a point south twenty-four degrees, twenty-three minutes west, nineteen and two one-hundredths chains from the northwest corner of Main and Union Streets, in the town of Olympia; thence south seven and fifty one-hundredths chains; thence west eight and fifty-eight hundredths chains; thence north, forty-seven degrees west, one and seventy-three hundredths chains; thence north, forty-eight degrees thirty minutes west, one and sixty hundredths chains; thence north sixty-five degrees west, one and ninety-three hundredths chains; thence north, thirty-three degrees thirty minutes west, two and eighty-hundredths chains; thence north, thirty-eight degrees west, one and seventeen hundredths chains; thence north, forty-five degrees west, one and eighty-seven hundredths chains; thence east sixteen and four hundredths chains, to place of beginning.

"Sec. 2.    This act to take effect and be in force fifteen days after its passage: *Provided,* That within that time the present owners or claimants give a deed of release for the above-described ten acres of land to the territory of Washington without expense to said territory, which shall be deemed satisfactory by a joint committee to be appointed by both branches of the Legislative Assembly to examine and receive the same."

On January 18, 1855, nine days later, Edmund Sylvester and his wife, Clara E., conveyed to the territory of Washington the lands in the act described, and on January 29, 1855, the territory, by a special act, accepted the deed, authorized it to be deposited in the office of the secretary of the territory, and directed that the governor take possession of the tract described and "hold possession thereof, for the use and behalf of the Territory of Washington, in accordance with the first section of the act and to which this is a supplement." Possession of the tract was thereupon taken, which possession has been maintained by the territory and its successor, the state of Washington, from thence until the present time.

The deed from Edmund Sylvester and wife to the territory was in form a deed of bargain and sale, the granting words being, "do grant, bargain, sell, convey and confirm unto the said" territory, etc. The *habendum* clause was as follows: "To have and to hold the same to the said party of the second part forever, free from any claim of the said party of first part, their heirs or assigns, or any or all persons claiming by, through, from, or under them or any of them." It was executed, as will be observed from the dates given, more than four years after Sylvester had made settlement upon the land, and more than a year after he had given notice to the surveyor general of Oregon of his intent to claim the same under the Oregon Donation Act, but was executed prior to the time he had made final proof of his settlement and cultivation, and prior to the time patent was issued to him therefor by the United States.

After the admission of the territory of Washington into the Union as a state, the legislature passed an act for the location of a capitol building on the land in question. At that time the then attorney general examined into the title of the state to the land, and advised that a deed be procured from the heirs of Edmund Sylvester in order to perfect the state's legal title. Pursuant to this opinion, after request made of them, the present appellants executed to the state a quitclaim deed to the land, reciting, however, that the deed was made and accepted on the express condition that the tract should be and remain the site for the capitol of the state of Washington, and that in the event of a breach of the foregoing condition, or in the event of the location of the capitol elsewhere than upon such tract, the deed should become null and void. The state, however, did not erect a capitol building upon this site. After spending some sixty odd thousands of dollars in the erection of a foundation for such a building, it abandoned the project, and erected a capitol building in another part of the city of Olympia, wherein all the state officers are now situate. But the state still maintains posses-

sion of the ten-acre tract, making biennial appropriations through the legislature for its care and preservation.

The foregoing facts are in the main undisputed. The appellants, however, make some question as to the time the notification to the surveyor general by Edmund Sylvester of his intent to donate the land was filed. They show that a survey of the land claim was made as late as April 22, 1857, and argue that inasmuch as the notification could not have been given until after the survey, it must have been given at a date later than the date found by the court. This contention is further supported by certificates from the surveyor general of Oregon and the register of the land office at Oregon city, Oregon, to the effect that neither office contains any record of the filing of such a notification. But the state produced a certified copy of the notification from the general land office at Washington. This paper bears on its face evidence of its genuineness, and shows conclusively that it was given at the date first above stated. It shows, moreover, that the claim had actually been surveyed prior to that time as it contains a description of it by metes and bounds corresponding in detail to the description given of the claim in the patent. The fact that this paper was not found in the offices where it would be expected to be found, does not detract from its character as evidence. The explanation is perhaps to be found in the fact that the territory of Washington was cut off from the Oregon territory between the time of the giving of the notification and the issuance of the patent, and the confusion arose in making the necessary transcription from the records incident to the creation of a new territory out of an old one. But be this as it may, there was no law requiring that this record be kept in the Oregon land offices, and the general land office at Washington, for its better preservation, might well take possession of it and maintain it as a part of its own files. We conclude, therefore, that the facts are correctly found. The question remaining is, did the court err in its conclusion of law to the effect that the state had title in fee to the land

in suit? In discussing this question we will notice the several contentions of the appellants in the order in which they present them.

The first is that the original deed from Edmund Sylvester and wife to the territory of Washington was void for want of a grantee empowered to take title. The argument is that the territory, not being sovereign, had no inherent power to take title to land, and that such a power was not conferred upon it by Congress in the act creating the territory. But without inquiring into the sovereign capacity of the territory to take and hold real property, and conceding that no express authority was conferred on the territory by the organic act, we still think that it had power to acquire and hold land for the purposes of a capitol site. From the quotations heretofore made from the organic act, it will be observed that the Congress especially empowered the legislative assembly of the territory to locate and establish the seat of government for the territory, and made an appropriation for the erection of suitable buildings on the site so selected. The power to locate and establish the seat of government and erect suitable buildings thereon, must have necessarily included the power to acquire and hold such a quantity of land as was required for that purpose. To hold otherwise would be to deny the territory power to carry out the powers expressly conferred, as it is manifest that it could not establish a seat of government and erect suitable buildings for its purposes without acquiring a site upon which to establish the seat of government or erect the buildings. The appellants suggest that the legislative assembly might have acquired by lease sufficient land for its purposes. But this instead of being an argument against the existence of the power to acquire title to the land, is a concession in its favor, as it would require no greater act of sovereignty for the territory to acquire property for capitol purposes by a deed in fee than it would to acquire the same property by a lease for a definite or indefinite time.

The fact that the Congress at a subsequent session made another appropriation for the erection of a "temporary capitol, and for a penitentiary, inclusive of the sites of the buildings," does not require the holding that no authority to acquire title to land was included in the previous grant of power. The latter act is in no way connected with the earlier one, and certainly does not preclude us from applying to the earlier one the ordinary rules of construction.

The second contention is that the deed, since it did not run to the successors or heirs of the territory, conveyed to it an estate terminable at the end of its existence, and that in consequence the property reverted to the heirs at law of Edmund Sylvester when the territory was merged·into the state. But the common law rule that the word heirs, or its equivalent, was necessary in a deed in order to convey a fee, had no application when the grant was to the crown. While the individual representing the sovereignty might change, the sovereign itself was immortal by perpetual succession, and on principle, a life estate to an ideal being having a perpetual and uninterrupted existence must be coextensive with a fee or perpetuity, and hence words of succession cannot extend it. For similar reasons the same result followed deeds at common law to corporations aggregate. Jones, Real Property, § 598; *Wilcox v. Wheeler*, 47 N. H. 488; *Asheville Division No. 15 v. Aston*, 92 N. C. 578. So, on similar principles, a deed to the territory did not require the words of succession in order to pass a fee. The deed, while in form to the territory, was in fact to the government, and while the form of· government changed in the change from a territory to statehood, there was no lapse in the government itself. The government has had an uninterrupted existence.

The third contention is that the deed is void because prohibited by the donation act itself. As originally enacted, the proviso to the fourth section of the act did provide that all contracts by any person for the sale of the land which such person might be entitled to under the act before he received

patent, should be void (9 U. S. Stat. at Large, 497, § 4), but by the amendatory act of July 17, 1854, 10 U. S. Stat. at Large, 305, § 2, it was further enacted, "That the proviso to the fourth section of the act of twenty-seventh of September, eighteen hundred and fifty, above mentioned, by which all contracts for the sale of lands claimed under that law, before the issue of patents therefor, are declared void, shall be, and the same is hereby, repealed: *Provided,* That no sale shall be deemed valid, unless the vendor shall have resided four years upon the land." This act has been held by this court, as well as by the supreme court of the United States, to permit a donation land claimant after four years' residence and cultivation, to sell and convey his claim, whether he had received patent therefor or not. *Roeder v. Fouts,* 5 Wash. 135, 31 Pac. 432; *Brazee v. Schofield,* 2 Wash. Ter. 209, 3 Pac. 265; *Brazee v. Schofield,* 124 U. S. 495, 8 Sup. Ct. 604, 31 L. Ed. 484; *Barney v. Dolph,* 97 U. S. 652, 24 L. Ed. 1063.

The deed in question here was executed after Edmund Sylvester had completed a four-years residence upon the claim. As shown by his own affidavits and the affidavits of his witness on which patent was issued, he commenced his residence on the land sometime in 1850, and resided upon it continuously until he made the deed to the territory, on January 18, 1855, a period of over four years. His deed, therefore, was not void for want of title in himself, nor did it violate any rule of public policy.

The appellants cite *Vance v. Burbank,* 101 U. S. 514, 25 L. Ed. 929, as overruling the earlier case of *Barney v. Dolph, supra,* but a more careful examination of the case will show that this is not so. The earlier Oregon cases, and some cases in the inferior Federal courts, had laid down the rule that the donation act was a grant *in praesenti,* the donor taking a present title subject to be defeated by conditions subsequent, and *Barney v. Dolph* was thought to affirm that principle. The case cited merely holds that this was not a correct con-

struction of the act, and that it was not intended in *Barney v. Dolph* to so hold. It held that the grant did not take effect until the settler had resided upon and cultivated the tract for four consecutive years, and otherwise conformed to the provisions of the act, but did not depart from the rule that the settler had power to convey the fee after having resided upon the land and cultivated the same for four consecutive years.

The fourth contention is, that the trial court erred in excluding parol evidence tending to show that the first deed was executed upon the condition that the territory would erect and maintain a capitol building upon the land conveyed. But manifestly there was no error in this. No rule of law is more uniformly applied than is the rule that a parol contemporaneous agreement cannot be shown to vary the terms of a written instrument. This rule is applicable here, as a deed is such an agreement as falls within the rule. Devlin, Deeds (2d ed.), § 850a.

The fifth contention is that the second deed, the deed made by the present appellants to the state, governs and determines the status of the parties and the tenure by which the state holds the land in question. Much of the argument under this branch of the case is based on the assumption that the first deed was invalid and insufficient to convey the title of the property to the state, but since we hold the deed to be valid and sufficient for that purpose, we need not follow the appellants into this branch of their argument. They argue further, however, that the state, having sought for and obtained the second deed, is now estopped from asserting that it holds the land under a different tenure than that expressed in such deed. But we cannot think the conclusion necessarily follows from the conduct of the state. Doubtless the appellants could have made it a condition on giving the second deed, if the state would have consented, that the land should revert to them in case the state should cease to use it as a capitol site, but they did not do this. The remedy reserved for a breach

of the condition was that the deed itself should be void,—that is to say, the state, by failing to perform the conditions, could claim nothing by virtue of the deed, but it was not provided that it must surrender all the rights it had acquired by virtue of the earlier instrument by a failure to keep these conditions, and to be enforced it must have been so expressly provided, as no such condition could be implied.

The sixth is that the original deed is void for want of a sufficient description of the property conveyed. The deed followed the description contained in the act locating the seat of government above quoted, with the exception that it omitted the phrase "town of Olympia" following the words "Main and Union streets." But the omission did not render the description void. Enough remained to accurately locate the land conveyed, and this is all that is necessary to constitute a sufficient description.

Lastly, the appellants object to the sufficiency of the answer filed on behalf of the state, contending that it contains an admission that the state holds the land in question subject to forfeiture in case it ceases to use it for a capitol site. We do not so read the answer, but if it required that construction it would not alter the appellants' position. The case was tried in the court below as if upon sufficient pleadings, and we must consider it upon the same theory in this court. To do otherwise would be to deny to the respondent the benefit of the statutes relating to amendments.

As we find no error in the record the judgment will stand affirmed.

Hadley, C. J., Mount, and Crow, JJ., concur.

Root, J. (dissenting)—I dissent. I think Mrs. Sylvester should have been permitted to give testimony as to what the real consideration was for the grant which she and her husband made to the territory of Washington. It is almost, if not entirely, a justifiable inference from the statutes and deed that this grant was made upon the understanding that this

land was to be used as the permanent site of the capitol for the territory and succeeding state. Her testimony was offered to fully establish this. I think it should have been received. The patriotism and beneficence manifested by Mr. and Mrs. Sylvester toward this commonwealth in its early infancy should not be repaid by a rigorous application of technical rules at this time. If, as I believe, they conveyed this land for the sole purpose of its being, and with the understanding with the territorial authorities that it should be, the permanent site of the capitol of the territory and state, I think that good faith and fair dealing require that the land should now revert, inasmuch as it has ceased to be used for the purpose for which it was thus granted.