[No. 28628. Department One. May 25, 1942.]

JOHN BRADLEY, *Appellant,* v. K. W. FACKLER *et al.,*
*Respondents.*[1]

[1]Reported in 126 P. (2d) 190.

*R. W. Greene,* for appellant.

*LeRoy McCann,* for respondents.

STEINERT, J.—Plaintiff instituted suit to recover possession of a patented mining claim, basing his action on a lease and a subsequent deed from the owners of the property. He also sought to obtain an accounting from defendants, and a judgment against them, for the value of certain equipment and mineral ore alleged to have been removed or extracted from the premises by them. In their answer defendants denied all the material allegations of the plaintiff's complaint, and set up four affirmative defenses to his action. They also cross-complained, alleging their right of possession of the mining claim by virtue of a leasehold interest derived through mesne conveyances from the plaintiff's alleged lessors, and prayed that their own title be quieted as against any assertion of right or interest by the plaintiff. The material allegations of defendants' pleading were, in turn, denied in plaintiff's reply. The cause was tried to the court without a jury, and a decree

was thereafter entered dismissing the complaint with prejudice, canceling of record the several instruments through which plaintiff claimed the right of possession, and adjudging the plaintiff to be without right, title, or interest in the property. Plaintiff has appealed.

The property here involved is known as the Pole Pick Mine, sometimes designated as the Johnson-Davidson mining claim, and consists of one mining claim and a fraction of another, in Chelan county. A patent covering the premises was granted to the Eleanor Mining Company in 1904, and is filed of record in the office of the county auditor of the same county.

It is conceded, or assumed, by all parties to this action that on May 29, 1933, the ownership of this property was in J. R. Moore and W. K. McKay. On that date, Moore and McKay leased the mine and the mining property to J. B. Carlson and W. G. Suckling for a period of ten years, unless sooner forfeited or determined. In consideration of the rights thus conveyed, the lessees covenanted, among other things, (1) to enter upon the claim and work the mine in a mine-like fashion and in a manner conformable with good, economical mining, so as to take out the greatest possible amount of gold and other precious metals, having due regard for the safety, permanency, and future development and preservation of the premises as a workable mine; (2) to work the mine steadily and continuously, maintaining at least forty eight-hour shifts per month, unless shut-downs should be made necessary by weather or water conditions; (3) to conduct their operations in conformity with the laws of the United States and the state of Washington, and the local rules and regulations of miners in that district, and to do no act and suffer no default which might in any manner involve the lessors or their ownership of the mining property; (4) to keep the premises free from all liens

whatsoever; (5) to pay the lessors, as rent and royalty, ten per cent of the gross yield of all gold, minerals, and precious metals extracted from the premises during the term; and (6) not to "locate or record said mining property." The lease reserved to the lessors the right to sell the premises and cancel the lease, but in that event the lessees were to be entitled to receive thirty-five per cent of the net recovery from the amount, as then estimated, of all valuable ore previously opened up by them. It was also provided that if the lessees should violate, or fail to perform, any of the terms of the lease, the lessors might forfeit the lease and enter into possession of the claim, upon written demand, either delivered to the lessees or conspicuously posted on the premises for a period of three days.

On May 17, 1934, the lease was amended to extend the term to May 17, 1944, unless sooner forfeited or determined, and further, to authorize a temporary relaxation of the requirement of steady and continuous working of the mine, by reducing the number of requisite shifts from forty to thirty for a five-month period beginning August 1, 1934, and ending January 1, 1935. At the time of execution of the amended lease, W. K. McKay seems to have been the sole owner of the property, since he alone signed it as lessor.

Shortly thereafter, on July 21, 1934, Carlson and Suckling, the lessees, formed a partnership with George W. Higginson, W. E. Cox, and the appellant, John Bradley, for the operation of the Pole Pick Mine, and, for a named consideration and with the consent of McKay, transferred their interests in the lease to the partnership. Carlson and Suckling together retained a fifty-one per cent interest in the partnership, and the remaining interest of forty-nine per cent was divided among the other three men. On December 14, 1934, McKay in writing gave Carlson and Suckling permis-

sion to stop work on the mine until March 1, 1935, on account of freezing weather, but the work was to be resumed on the latter date.

It appears that the original lessees, or more probably the members of the partnership, did some development work on the mine, including the construction of a mill, and also mined small quantities of ore during the period between July, 1934, and August, 1935, but it is conceded that after August, 1935, no work of any kind was ever done thereon by Bradley or by anyone associated with, or employed by, him. This fact has an important bearing upon the decision of this case. The trial court found, furthermore, that no ore of any substantial value was left opened up on the property when Bradley quit work in August of 1935.

W. K. McKay died intestate some time in the early spring of 1935, leaving as his sole heirs at law his surviving wife, Maude McKay, and three grown children. In the latter part of March, 1936, the children conveyed their interest in the property here involved to their mother.

On March 31, 1936, seven months after all work on the mine by Bradley and his associates had ceased, Maude McKay conveyed and quitclaimed to one E. J. Edwards all her right, title, and interest in the property. In the meantime, on March 11, 1936, E. J. Edwards had "granted, bargained, sold, remised, released and forever quitclaimed" to The Gold Bond Mining Company, a corporation, the real estate and mining property here involved. The deed contained a clause reading:

"To HAVE AND TO HOLD, all and singular, the said premises, together with the appurtenances and privileges thereunto incident, unto the said party of the second part, his heirs and assigns forever."

The Gold Bond Mining Company was incorporated on August 31, 1935, by E. J. Edwards and four other individuals. It appears from the record herein, however, that since its incorporation the company has filed no papers in the office of the proper county auditor, and that on July 1, 1939, it was dissolved for nonpayment of its annual license fees.

As heretofore stated, there was no operation of the mine after August, 1935. It also appears that with the exception of the deeds just referred to whereby the interest of the heirs of W. K. McKay passed to The Gold Bond Mining Company, and an assignment whereby W. E. Cox transferred to George W. Higginson his entire interest in the mining partnership mentioned above, there were no transfers affecting anyone's interest in the property here involved until the spring of 1938.

In the early part of April, 1938, Bradley took assignments from his associates of their respective interests in the property. Shortly thereafter, on June 25, 1938, Bradley procured Mrs. McKay's signature to the amended lease which W. K. McKay, on May 17, 1934, had executed to Carlson and Suckling, and induced her to execute a separate instrument certifying her approval of that lease and of the assignment to Bradley of an interest therein. This acknowledgment expressly stated, however, that Mrs. McKay did not warrant title in any manner.

On August 23, 1938, Bradley filed in the office of the auditor of Chelan county a notice of location of the Pole Pick Mine, by alleged right of discovery and location. The notice recited that it was intended as a relocation of an abandoned mining claim which had been rediscovered on July 30, 1938.

On October 20, 1938, The Gold Bond Mining Company leased the property here in question, together

with several adjoining mineral claims, to one Cecil Cosper. On December 28, 1939, Cosper in turn leased the Pole Pick claims to Charles Sine and H. B. Stoner, the latter being one of the respondents herein.

About the first of January, 1939, respondent K. W. Fackler came to Chelan county and entered upon a mining venture there. While working in the vicinity of the Pole Pick Mine in July, 1939, he met Bradley, who had come to inspect the property which he himself had formerly operated. Bradley, it appears, then tried to interest Fackler in renewing operation of the Pole Pick Mine on a royalty basis. At the same time, he mentioned his lease from McKay but stated that the mine had been abandoned and that he had filed a relocation thereon. Nothing came of that conversation with Fackler, and Bradley left without renewing operations. In the latter part of 1939, or the early part of 1940, Fackler became associated with Stoner and Sine. During the early part of 1940, Fackler worked on another mine in that region, under a percentage arrangement, and then worked on the Pole Pick Mine on a similar basis. Finally, on May 29, 1940, Stoner and Sine leased the Pole Pick claims to Fackler outright, and he has operated them in his own name ever since. It appears that he later discovered, and has since mined, a considerable amount of valuable ore thereon.

On July 25 and 27, 1940, Bradley and his present attorney procured from Maude McKay and her three children quitclaim deeds purporting to convey to them the property here in question. Bradley then made a formal demand upon Fackler for possession of the property, and upon his refusal to comply, began this action on August 14, 1940.

It is apparent from the trial court's oral decision, appearing in the statement of facts, that the decree

herèin was based upon a finding that appellant Bradley had abandoned operations under the lease through which he had originally obtained his interest in the property here involved. The propriety of that finding presents the principal question to be decided upon this appeal.

The authorities appear to be in general agreement in holding that mining leases, like other leases, may be terminated by the lessee's abandonment of his leasehold as well as by the lessor's declaring the lease forfeited by reason of the lessee's failure to perform the covenants contained therein; that the question of abandonment is ordinarily one of intention to be decided as a question of fact; and that where the evidence is sufficient to convince men of reasonable minds that the lessee has intended to abandon the enterprise contemplated under his lease, the courts will afford relief by cancellation of the lease, or by other adequate remedy. *Paine v. Griffiths* (C. C. A. 3rd), 86 Fed. 452, 19 Mor. Min. Rep. 297; *Brown v. Wilmore Coal Co.* (C. C. A. 3rd), 153 Fed. 143, writ of certiorari denied, 209 U. S. 546, 52 L. Ed. 920, 28 S. Ct. 758; *Mauney v. Millar,* 134 Ark. 15, 203 S. W. 10; *Millar v. Mauney,* 150 Ark. 161, 234 S. W. 498; *Worrall v. Wilson,* 101 Iowa 475, 70 N. W. 619; *Price v. Black,* 126 Iowa 304, 101 N. W. 1056; *McColl v. Bear Creek Coal Mining Co.,* 162 Iowa 491, 143 N. W. 532; *Mineral Land Inv. Co. v. Bishop Iron Co.,* 134 Minn. 412, 159 N. W. 966, L. R. A. 1917D, 900; *Killebrew v. Murray,* 151 Ky. 345, 151 S. W. 662; *Thomason v. Funderburk,* 254 S. W. (Tex. Civ. App.) 400; *Bluestone Coal Co. v. Bell,* 38 W. Va. 297, 18 S. E. 493; *Chandler v. French,* 73 W. Va. 658, 81 S. E. 825, L. R. A. 1915B, 561; 36 Am. Jur. 320, Mines and Minerals, § 58; 40 C. J. 1007, Mines and Minerals, § 606; notes, Ann. Cas. 1917E, 1120, 1146; (1929) 60 A. L. R. 901, 926; L. R. A. 1915B,

561, 565. See, also, *Mendota Coal & Coke Co. v. Eastern Railway & Lbr. Co.* (C. C. A. 9th), 53 F. (2d) 77.

Thus, a lessee's failure to continue mining operations on the leased premises may constitute both an abandonment of the lease and a violation of a covenant obligating him to prosecute the mining enterprise with reasonable diligence. If the lessor elects to treat it as an abandonment, he may make other arrangements for the development of the mine without notifying the lessee of his intention; but if he chooses to regard the lessee's stoppage of work as a breach of covenant, giving rise to a forfeiture of the lease, he must notify the lessee of his intention to forfeit, and such notification must satisfy the requirements of the forfeiture clause contained in the lease.

The evidence in the case at bar was ample, in our opinion, to warrant a finding that appellant had abandoned the enterprise contemplated under his lease, and thus to support the conclusion that all his rights thereunder had been terminated. From the standpoint of the lessors and their successors, the sole consideration for the execution and continuation of the lease arose out of the lessees' undertaking that the mine would be worked steadily and continuously in the manner prescribed, to the end that the lessors should receive their royalties. As was stated in *Conrad v. Morehead,* 89 N. C. 31:

"It would be unjust and unreasonable, and contravene the nature and spirit of the lease to allow the lessee to continue to hold his term a considerable length of time, without making any effort at all to mine for gold or other metals. Such a construction of the rights of the parties would enable him to prevent the lessor from getting his tolls under the express covenant to pay the same, and deprive him of all opportunity to work the mine himself, or permit others to do so. The law does not tolerate such practical ab-

surdity, nor will it permit the possibility of such injustice."

The lessees and their successors, including the appellant, have failed to fulfill their obligations under the lease, it being conceded that no work has been done on the mine since August, 1935. Moreover, appellant, by attempting to relocate the property as an abandoned mine, has not only supplied further evidence of his abandonment of the lease, but has also done what the lease specifically obligated him not to do. The lessors' successors were therefore justified in assuming that the lease had been abandoned, and in making other disposition of the property, resulting finally in the lease from Stoner and Sine to K. W. Fackler.

Under one of appellant's assignments of error he makes the contention that the deed from Maude McKay to E. J. Edwards was void for indefiniteness of description. In that deed the property was described as

"Pole Pick mine, situated in Caldwell Gulch in Chelan County, State of Washington, sometimes known as the Johnson-Davidson mining claims, consisting of one (1) patented claim and a fraction (known as the Pole Pick and Pole Pick fraction) . . . all of the above described property being located between Nigger Creek and Peshastin Creek, near the town of Blewitt, in what is known as the Peshastin Mining District, sometimes designated as Leavenworth Mining District and Blewitt Mining District; . . . "

We think that this description, particularly when read in connection with the original patent, is sufficient to identify the property and to permit its accurate location. See *Sylvester v. State*, 46 Wash. 585, 595, 91 Pac. 15, 19, affirmed, 215 U. S. 80, 54 L. Ed. 101, 30 S. Ct. 25.

Aside from what has just been said, however, if the description in the deed is insufficient, then, by the same token, the description in the lease under which appellant claims the right of possession is likewise in-. sufficient. The description in the lease reads:

" . . . a certain mine and mining property situated in the Leavenworth Mining District known as the Pole Pick Mine situated in Caldwell Gulch in Chelan County, State of Washington, sometimes known as the Johnson Davidson Mining Claim consisting of one (1) patented claim and a fraction and recorded with the County Auditor of Chelan County as the Johnson Davidson Mining Claim. . . . "

This argument can therefore avail the appellant nothing in this action.

Appellant next contends that The Gold Bond Mining Company took no title under its quitclaim deed from Edwards, because that deed was executed and delivered to the corporation before Edwards himself acquired title to the property from Mrs. McKay. It is true that Edwards' deed to the corporation antedated that whereby Mrs. McKay conveyed her interest in the mine to him, but the deed to The Gold Bond Mining Company was more than a mere statutory quitclaim deed and was therefore not subject to the limitations imposed upon that type of conveyance. Edwards' deed contained the "to have and to hold" clause set out above and purported to "grant, bargain, sell, remise, release and forever quitclaim" the property here involved. In *West Seattle Land & Imp. Co. v. Novelty Mill Co.*, 31 Wash. 435, 72 Pac. 69, this court was called upon to construe a deed containing similar granting and habendum clauses in the light of §§ 4521 and 4538a of Ballinger's Code (which now appear, in substantially the same form, as Rem. Rev. Stat., §§ 10554 and 10571 [P. C. §§ 1908-31 and 1930], respectively).

In that case we held that the deed there in question served to convey more than a release of the grantor's claim at the time of the deed's execution, and that because of its habendum clause it conveyed, upon its face, any title subsequently acquired by the grantor. We therefore hold that the deed from Edwards to The Gold Bond Mining Company conveyed the title which Edwards subsequently acquired from Mrs. McKay.

Finally, the appellant contends that the lease from The Gold Bond Mining Company, through mesne conveyances, to respondent K. W. Fackler is void because the company never completed its corporate organization and because its lease to Cosper, through whom Fackler now claims, was not properly acknowledged. Appellant's contention is met and disposed of by the long-established rule that a party seeking to recover possession of land which is in the possession of another must recover, if at all, on the strength of his own title, and not on the weakness of that of the person in possession. *Hughes v. South Bay School Dist. No. 11,* 32 Wash. 678, 73 Pac. 778, rehearing denied, 74 Pac. 333; *Humphries v. Sorenson,* 33 Wash. 563, 74 Pac. 690; *George v. Columbia & Puget Sound R. Co.,* 38 Wash. 480, 80 Pac. 767; *Helm v. Johnson,* 40 Wash. 420, 82 Pac. 402; *Bryant Lbr. & Shingle Mill Co. v. Pacific Iron & Steel Works,* 48 Wash. 574, 94 Pac. 110; *Delacey v. Commercial Trust Co.,* 51 Wash. 542, 99 Pac. 574, 130 Am. St. 1112; *Seymour v. Dufur,* 53 Wash. 646, 102 Pac. 756; *Hauge v. Walton,* 72 Wash. 554, 131 Pac. 248; *Moon v. Tumwater Paper Mills Co.,* 157 Wash. 453, 289 Pac. 24.

K. W. Fackler has been in possession of the property and has been working the mine ever since May, 1940, under a lease stemming from The Gold Bond Mining Company. During no part of that period has

appellant been in possession. If Fackler's title or right of possession is for any reason defective, that is of no concern to appellant unless he can establish a superior right in himself. This he has failed to do.

The decree is affirmed.

ROBINSON, C. J., MAIN, MILLARD, and DRIVER, JJ., concur.

[1]Reported in 126 P. (2d) 199.