Charles M. COLEMAN and the Riverton
Uranium Corporation, a corporation,
Appellants,

v.

MOUNTAIN MESA URANIUM CORPO-
RATION, Appellee.

RIVERTON URANIUM CORPORATION,
Appellant,

v.

MOUNTAIN MESA URANIUM CORPO-
RATION, Appellee.

Nos. 5747, 5748.

United States Court of Appeals
Tenth Circuit.

July 8, 1958.

Rehearing Denied Aug. 7, 1958.

Albert W. Dilling, Chicago, Ill.
(Spence & Hill, Riverton, Wyo., on the
brief), for appellants.

Edward E. Murane (of Murane &
Bostwick), Casper, Wyo., for appellee.

Before MURRAH, PICKETT and
LEWIS, Circuit Judges.

MURRAH, Circuit Judge.

This appeal from the United States
District Court of Wyoming involves de-
termination of the ownership of mining
leases on certain uranium properties in
Fremont County, Wyoming. The dispute
arose as the result of contractual negoti-
ation between appellee, Mountain Mesa
Uranium Corporation, and San Juan
Uranium Corporation, followed by deal-
ings between San Juan and appellant.
Coleman.

On May 2, 1955, Mountain Mesa grant-
ed to San Juan the mining lease to the
properties involved herein under an
agreement obligating San Juan to con-
duct continuous mining operations on
them, and to remit to Mesa a percentage
of the profits therefrom.

On the following July 30, San Juan entered into an agreement with Coleman, subject to ratification by its Board of Directors, granting Coleman an option to buy its mining rights, provided that certain presently immaterial amendments were made to the May 2 agreement between Mesa and San Juan, and conditioned upon the payment of $2,500 by Coleman within seven days after demand.

On the following September 26, Mesa and San Juan entered into a revised lease agreement (predated September 7 by consent), incorporating the changes contemplated in the July 30 San Juan-Coleman agreement. It expressly provided for continuous mining operations and for default twenty days after cessation thereof.

Shortly after the September 26 revised agreement, Coleman sought to exercise his alleged option on the mining lease held by San Juan. Very soon thereafter, Mesa mailed San Juan a notice of default for failure to comply with the continuous mining obligations of their lease, excluding however, certain properties on which San Juan had acquired mining rights under the revised agreement. Upon receipt of this default notice, San Juan wrote to Coleman that all of its rights had been lost so that "San Juan does not have a farm-out agreement to transfer to anyone."

In the following December, Coleman and his assignee, Riverton, brought this suit against San Juan and Mesa, seeking performance of its July 30 agreement with San Juan, and praying damages. The complaint was inordinately and inexcusably prolix, but included allegations showing the dealings between the various parties and also allegations of collusion between San Juan and Mesa in the purported default of San Juan's mining rights.

The trial court first sustained a motion for summary judgment in favor of Mesa, though not San Juan. On appeal, we reversed, holding that the pleadings and depositions stated a disputed issue of fact which, if successful in proof, would entitle Coleman and Riverton to recovery against Mesa. Coleman v. Mountain Mesa Uranium Corp., 10 Cir., 240 F.2d 12. During the pendency of the appeal on the summary judgment, Coleman and Riverton entered into a separate settlement agreement with San Juan, under which San Juan transferred any interest it might have in the mining rights to Riverton.

On trial after remand, the court found that the July 30 agreement granting an option on the mining rights to Coleman was not ratified by the San Juan Board of Directors as required by its terms, hence never binding on San Juan. It found, furthermore, that San Juan accepted the notice of default by Mesa and abandoned all "rights and interests" acquired under their contracts with Mesa, and that Coleman and Riverton had generally failed to sustain the burden of their allegations.

On appeal, appellants attack the findings of the court on lack of ratification of the San Juan-Coleman July 30 agreement, and on San Juan's default and abandonment of the Mesa-San Juan revised agreement.

If, as the trial court held, the San Juan-Coleman agreement was never ratified by the San Juan Board, neither Coleman nor Riverton acquired any rights in the mining property and the controversy ends there, unless, of course, they acquired some rights in their settlement agreement with San Juan during the pendency of this litigation. There is evidence in the record tending to show implied ratification, and there is also a debatable issue of forfeiture in view of the time and content of the default notice. But if the court did not err in its finding on abandonment, a discussion of ratification is academic, and a decision on the harsh grounds of forfeiture of San Juan's rights is unnecessary, for abandonment assuredly puts all matters to rest.

■ Forfeiture is harsh and disfavored. Abandonment rests upon the intent of the lessee to relinquish his rights coupled with a quitting of the premises. Abandonment is voluntary, forfeiture

coercive. See Ellis v. Brown, 6 Cir., 177 F.2d 677, 13 A.L.R.2d 945; Fuqua v. Chester Oil Co., Ky., 246 S.W.2d 1007; Hudspeth v. Schmelzer, 182 Okl. 416, 77 P.2d 1123; Hoff v. Girdler Corp., 104 Colo. 56, 88 P.2d 100; Storm v. Barbara Oil Co., 177 Kan. 589, 282 P.2d 417; Bradley v. Fackler, 13 Wash.2d 614, 126 P.2d 190; Del Giorgio v. Powers, 27 Cal. App.2d 668, 81 P.2d 1006; Thornton Oil & Gas, § 242; Annotation, 60 A.L.R. 926; 36 Am.Jur., Mines & Minerals, § 58.

■ San Juan's president, Chadwell, testified at the trial that San Juan abandoned its rights to the property and did no more mining operations on the claims. This is corroborated by the letter Chadwell wrote Coleman in early October 1955, telling of Mesa's default notice, after which San Juan had no "farm-outs to transfer to anybody." Further testimony in the record shows that mining operations on the claims after the default notice were carried on by agents of Mesa rather than by San Juan. It is true that Chadwell's testimony was impugned on cross-examination by a letter he wrote and by a new release given by another San Juan officer, indicating mining operations were conducted by San Juan after the default. And appellants' counsel has called our attention to collateral pleading by San Juan in which it asserted some interest in the properties after the alleged abandonment. But when all of the contravening evidence is considered in totality, we cannot say that it is sufficient to overcome the direct testimony of abandonment so as to render the court's findings thereon clearly erroneous.

■ As an optionee from San Juan, Coleman stood in its shoes. He acquired no greater right to the property than San Juan held under its agreement with Mesa. Nor is Riverton's position more advantageous since its rights rest on its assignment from Coleman and its settlement agreement with San Juan.

■ Of course, if, as appellants suggest at one point in their brief, the acts of abandonment were done pursuant to a collusive agreement between Mesa and San Juan, the court would disregard any such abandonment in the determination of appellants' contractual rights. In the prior appeal, some emphasis was laid on Mesa's knowledge of the negotiations and transactions between San Juan and Coleman. And, the quickness with which Mesa declared a default and San Juan informed Coleman of the loss of his rights in the property are suspicious. But suspicious coincidence of time of events do not compel a verdict of guilt, especially in the face of the trial court's general finding to the contrary.

The judgment is affirmed.